CHARLES W. BURROUGHS

v.

DANIEL COMEGYS.

EVIDENCE—In April appellee contracted with appellant to deliver a certain quantity of corn in return for some oats. In May appellant made a similar contract with one G. Appellee brought an action against appellant for fraud in mixing sand with the oats. G. was allowed to testify as to the sand foun l in the oats sold him. *Held*, that such evidence was inadmissible. The transactions were separate and distinct, and proof of the character of one was no proof of the character of the other.

APPEAL from the Circuit Court of Grundy county; the Hon. GEORGE W. STIPP, Judge, presiding. Opinion filed December 5, 1885.

On the 17th day of April, 1882, a contract was made between the appellant and appellee, that appellee should deliver to the appellant forty bushels of corn, and should receive from the appellant sixty bushels of oats in exchange therefor. In pursuance of this contract, on the same day appellee delivered to the appellant on his premises, a wagon load of thirty-one bushels and sixty-six pounds of corn, and received from appellant per weight thirty-seven bushels and twenty-six pounds of oats. The oats were on that day taken home by appellee and by him left in his wagon covered by some old boards. The oats were received on Monday and remained in the wagon until the latter part of the week, untouched and unnoticed except a few handfuls that were used to pack some eggs, when two sacks of them were taken out of the ·wagon

by appellee and sown.  The appellee during the following week continued to take oats from the wagon into his field and sow them until upwards of twelve bushels had thus been used and no sand or dirt had been observed in them by the appellee or any member of his family, so far as this record shows.  On Monday, May 1, 1882, one John Graham made a contract with appellant to furnish appellant forty bushels of corn, for which he was to receive from the appellant sixty bushels of oats.  On the second day of May, Graham delivered to the appellant at his house some twenty-five bushels of corn and received from the appellant some sixty bushels of oats.  On the morning of the fourth of May, Graham, with a bag of the oats which he received from appellant, went over to the farm of appellee to interview him and ascertain if there was sand in the oats he had received from appellant.  He had examined appellee's oats in the wagon on the day before and states that he found sand the same as in his own that he had got from appellant.  Up to this time appellee had not discovered any sand in the oats.  After being informed by Graham of the presence of sand in his oats, appellee made an examination of his oats in his wagon and found some sand in them.  This was some nineteen days after he had received them.  The amount of sand claimed to have been in the oats was a pound to the bushel.  The number of bushels of oats delivered was ascertained by filling a bushel and a half basket and weighing it and multiplying that weight by the number of basketfuls.

Appellee instituted this suit before a justice of the peace, which suit by appeal was taken to the circuit court, where a verdict was rendered and judgment entered in favor of the appellee for three dollars and seventy-five cents.

This appeal is prosecuted to reverse that judgment and various errors are assigned.

Mr. S. C. STOUGH, for appellant; cited 1 Best on Evidence, 475, § 251 ; Holcombe v. Hewson, 2 Camp. 391 ; 1 Greenleaf on Evidence, §§ 51, 52 ;  Vason v. Beall, 58 Ga. 509;  Tucker v. Peasley, 36 N. H. 180 ;  Blackwell v. Hamilton, 47 Ala. 472;

State v. Lepage, 57 N. H. 245; Griffith v. Payne, 39 Eng. Com. L. 34.

Messrs. Jordon & Wing, for appellee; as to the admissibility of Graham's evidence, cited Bump on Fraudulent Conveyances, 583; Cary v. Hotailing, 1 Hill, 311; 1 Phillips on Evidence, note 333, p. 452, Cowen & Hill's Ed.; Erving v. Motley, 7 Bing. 543; Rowley v. Bigelow, 12 Pick. 307; Jackson v. Zimmerman, 12 Wend. 299; McElwee v. Rutton, 2 Bail. 128; Lowry v. Pinson, 23 Am. Dec. 140; VanKleek v. Leroy, 4 Abb. N. S. 433; Hersey v. Benedict, 15 Hun, 287; Miller v. Barber, 66 N. Y. 568; People v. Shulman, 80 N. Y. 375; Viele v. Goss, 49 Barb. 98; Lansing v. Russell, 13 Barb. 521; French v. White, 5 Duer, 259.

Welch, J. Were it not that there is something more involved in this suit than the pecuniary amount of the judgment to the appellant, we should feel inclined to apply to this suit the maxim *de minimis non curat lex*. But finding that the questions presented by this record involve what is of more value than silver or gold to the appellant, his character for honesty and fair dealing, we have given to the case that consideration which the gravity of the question involved seems to demand.

Appellee's cause of action is based upon the claim that appellant deliberately and intentionally put the sand and dirt in the oats for the express purpose of defrauding appellee in the weight of the oats; that was the only effect it could have upon the oats. The evidence upon this subject is very unsatisfactory, and it was absolutely essential to a fair and impartial trial, that no incompetent evidence should be admitted, the effect and tendency of which might be to influence and bias the minds of the jury.

On the trial, appellee examined John Graham, who testified: "I got oats from the defendant in the spring of 1882; he said I got sixty-two bushels, but I did not think that I got over forty bushels."

The evidence upon and concerning this transaction between

the witness and defendant, was here objected to by defendant's counsel; but the court overruled the objection and admitted the evidence, to which ruling of the court the defendant, by his counsel, then and there excepted.

"Got the oats from the middle bin, in door yard, near the house. I discovered sand in the oats I got. Noticed sand first when I was sowing them. I did not put the sand in them. The wind blew the sand in my eyes, whiskers and on my coat and in my hair, when I was sowing them. This was the first I discovered the sand. It was about two hours after I got the oats that I discovered the sand. A tin water pail was set in the wagon on the oats, and when it was picked up sand was found on the bottom of the pail. Noticed sand on my coat and in my hair. My boy put some oats in his mouth to chew and found sand in them."

This evidence was objected to by defendant as it was coming in, but the court overruled the objection and defendant excepted.

"In the evening I went to unload the oats, for I thought it was going to rain, and I saw sand in the bottom of the wagon. Got my oats after Comegys got his. Thought there were about two hundred bushels left in the bin. I got into the bin to help load the oats and defendant told me to get out of the bin, that he would shovel the oats himself, and I got out of the bin. It was bank or mason's sand. He has sandy land down on the bottom. We unloaded about one half of the oats in a crib at the house and drove the balance into the field. Discovered sand within two hours. I got my oats after Comegys got his."

The foregoing evidence concerning the oats that witness got from defendant, together with the evidence about sand being in them, and the time and manner of discovering the sand, was all objected to by defendant at the time it was coming in, but the court overruled all such objections and the defendant excepted.

Some oats and sand were shown witness which he stated were the oats he got from Burroughs, and that they came from his wagon, and were some which he scooped up with his hand.

They were then shown to the jury under objection of defendant, which objection the court overruled and the defendant excepted.

George Graham was also introduced and testified against the objection of appellant to the same transaction of his father with the appellant. The admission of this evidence by the court against the objection of appellant is one of the errors assigned. It is insisted by the counsel for the appellee that there was no error in admitting this evidence, and we are referred to Bump on Fraudulent Conveyances, 579, 583; 1st Hill, 311; 13 Pick. 307; 12 Wendell, 299, and to other authorities, as sustaining the action of the court in the admission of this class of evidence. We have examined these authorities, and the rule deducible from them is, that in cases to prove the fraudulent intent of a debtor in a conveyance, or of a vendee in a purchase, evidence of other fraudulent transfers at or about the time of the transfer in controversy is competent. As in the case in 1st Hill, 311, where the vendor sought to recover goods from the vendee upon the ground that the purchase was fraudulent, that no title passed. And in 12 Wendell, 299, where the question was whether a voluntary deed was fraudulent, evidence of other contemporaneous transactions of the grantor and grantees in relation to other portions of property was held admissible. In all the cases referred to the question was the intent with which the substantive act was done.

How the transaction of appellant with Graham, on May 2d, can in any manner indicate what his motives, purposes or intentions were on April 17th toward appellee, we are unable to perceive. What appellant did to Graham on May 2d, in no manner tends to prove what he did with appellee on April 17th. They were separate and distinct transactions, and proof of the character of one was no proof of the character of the other. It is an established rule that the evidence offered must correspond with the allegations, and be confined to the point in issue. This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dis-

pute, and the reason is, that such evidence tends to draw away the minds of the jury from the point in issue, and to excite prejudice and mislead them. 1st Greenleaf Ev., Secs. 51, 52 ; 1 Wharton Ev., Sec. 29 ; 1st Best Ev., Sec. 251, page 476.

In the view we take, it was only competent for the appellee to show what was the condition of the oats that he received from the appellant, and in doing this it was competent for him to show what the condition of the oats was in the bin from which his was taken, just before and after he took his, as tending to show what the condition of his was when it was taken by him, from the bin. Graham and his son were competent to testify as to its condition when seen by them in the bin, and their testimony should have been limited and confined to, that. They should not have been allowed to testify concerning the barter and trade between Graham and the appellant for the oats and corn, what was said at the time or subsequently, in relation thereto, nor the circumstances attending that transaction. The effect of such testimony was to prejudice the minds of the jurors against the appellant. As said by Lord Ellenborough, in Holcombe v. Henson, 2d Camp. 391, "This is *res inter alios acta.* We can not here inquire into the quality of different beer furnished to different persons. The plaintiff might deal well with one and not with the other." The objections made by the appellant during the trial, to the admission of all of this evidence as to the trade of Graham with the appellant for oats, what was said at the time and subsequently, and all the circumstances attending the transaction should have been sustained, and the court erred in overruling the objections thereto, and in admitting it in evidence. Inasmuch as this case will have to be reversed and remanded for another trial, we will refrain from commenting on the evidence further.

For the errors herein indicated the cause is reversed and remanded.

Reversed and remanded.