BILLY R. SCAGGS, Plaintiff-Appellant, *v.* DONALD RAY HORTON *et al.*, Defendants-Appellees.

Fifth District No. 79-12

Opinion filed June 26, 1980.

Robert E. Wells, Jr., of Pessin, Baird & Wells, of Belleville, for appellant.

Walker & Williams, P. C., of Belleville (Donald J. Dahlmann, of counsel), for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff filed a two-count complaint against defendants, Donald Ray Horton and Missouri Pacific Truck Lines, Inc., alleging that defendant Horton, while in the scope of his employment with Missouri Pacific Truck Lines, Inc., negligently operated a tractor-trailer, proximately causing serious and severe injuries to plaintiff. The court entered judgment on a jury verdict in favor of both defendants and against plaintiff. Plaintiff appeals from the judgment and from the denial of a post-trial motion requesting a judgment *n.o.v.*, or in the alternative, a new trial.

Plaintiff was driving his black Ford pickup truck north on Illinois Route 3 in Dupo, Illinois, on the afternoon of June 12, 1975. Defendant Horton, an employee of defendant Missouri Pacific Truck Lines, Inc. (hereinafter referred to as Missouri Pacific), was driving a Missouri Pacific tractor pulling a 40-foot trailer south on Route 3. The combined length of the tractor and trailer was 55 feet. Defendant Horton was executing a right-hand turn onto the East Carondelet Crossing when a collision occurred between the left rear of the trailer he was pulling and the pickup being driven by plaintiff. Each party claims that the vehicle he was driving was within his lane of traffic and that the other party crossed the center line and entered his lane of traffic. Route 3 at this location was a two-lane highway divided by a solid yellow line. Each lane of traffic was between 10 and 11 feet wide, and the southbound lane near the East Carondelet Crossing had a shoulder of approximately 10 feet.

Plaintiff testified that as he was driving north, the tractor swayed over into his lane and that he swayed to the right to avoid hitting it. There was no contact with the tractor; however, plaintiff stated that after he swayed over to the right, he got back into his lane and suddenly the accident happened. He testified that the rear end of the trailer struck him. Plaintiff denied ever crossing the center line. He related that after the accident, he drove into a nearby Mobil station to avoid blocking traffic, then lost consciousness. A portion of plaintiff's left arm was severed, and

the injury eventually required the amputation of plaintiff's left arm above his elbow. The left side of his pickup was scraped and there was a dent along the left side. Also, the wing and side mirror were broken off.

Defendant Horton testified that he had started to make his right-hand turn when he noticed the plaintiff "come out of the traffic just, kind of wander over the center line and then headed straight for the rear tandems on the tractor." He further related "* * * then I noticed the driver had his hands on top of the steering wheel, and his head between his hands and I started to reach for the horn and he through [sic] his head back and turned and went parallel with the tractor." He could not see the impact because of the bulkhead. The only indication of the impact was the sound he heard. He stopped momentarily, then completed his turn and parked his vehicle in a vacant lot.

In addition to the parties, three eyewitnesses testified. One was the brother-in-law of the plaintiff, Charles Lawson. He testified that he was following about 150 feet to 300 feet behind the defendant in the second car behind the tractor-trailer. He did not actually see the collision, but noticed the noise and looked up, and the tractor-trailer was a foot or two over the center line. He did not notice the other vehicle involved, although it went past him. He did not learn until later that his brother-in-law was involved in the accident.

Another eyewitness was 16-year-old Mark Lambert, who was sitting at the northeast corner of the intersection. He was watching traffic; and after he heard a noise from the collision, he looked and saw a black pickup truck "coming back across the line." According to Lambert, the pickup was "half and half" over the center line. He did not see the actual collision nor did he see the tractor-trailer in the northbound lane.

The last eyewitness was Nathan Price, who works as a contractor for different railroads, including the defendant, Missouri Pacific. He was driving a pickup truck and was the second vehicle eastbound on East Carondelet Road, about 30 feet from Route 3. He saw Horton's truck start to turn, with the right-hand tires off of the shoulder. He noticed plaintiff's pickup truck about 100 feet south of the intersection cross the center line by approximately two or three feet. He related that the plaintiff gradually crossed the center line and that he continued watching because he did not think the vehicle would stop. According to Price, the pickup made a single veer across the center line in a straight line and never went back to the right. It was blocked from his view behind Horton's tractor-trailer, but he could see it running along the other side of the trailer. The only contact was with the rear portion of the trailer. Price related that it looked as if the plaintiff "went to sleep or something and just veered off the road." He saw plaintiff's elbow in the road after the accident, but someone else picked it up.

Prior to trial, defendants filed a motion *in limine* to exclude evidence of vehicles operating at this intersection on dates other than the date of plaintiff's injury and evidence of prior collisions other than the one between plaintiff and Horton. The motion was granted over plaintiff's objection. Plaintiff now assigns this as error. He contends that evidence of the common practice use by similar tractor-trailer combinations at this intersection under similar conditions was relevant. He argues that such evidence would show either a common occurrence giving rise to the inference that it was necessary for a tractor-trailer to swing over the center line while executing a right-hand turn at this intersection or that it would rebut defendant Horton's testimony as to the manner in which he executed the turn at the time of the accident. Plaintiff contends that the granting of the motion *in limine* deprived the jury of the right to receive and consider relevant testimony and evidence material to the case. Plaintiff further contends that this evidence would be admissible to show "custom and trade usage" or to show a "common ground or common occurrence."

Defendants contend that plaintiff has waived any error that may have resulted from the exclusion of this evidence by failing to make an offer of proof. Plaintiff urges that his attempt to make an offer of proof is established in the record.

At the end of plaintiff's direct examination of Roy Larson, the following exchange between court and counsel occurred:

"MR. WELLS: Your Honor, may we approach the bench? (At this time the attorneys approached the bench and a conference was held, on the record, out of the hearing of the jury.)

MR. WELLS: Your Honor, at this point I would like to offer evidence as to concerning other turns made at this intersection by other vehicles. Now, the motion in limine has been granted, precluding me from doing so and I want to make it clear for the record that I have this witness here to testify to that particular fact.

MR. DAHLMANN: I think this is the subject of the previous motion which has already been excluded.

THE COURT: I thought we already ruled on that.

MR. WELLS: O.K. I just wanted to make it clear.

THE COURT: Yes.

MR. WELLS: I have no further questions of this witness."

Again, at the end of plaintiff's direct examination of Arthur Hannah, the following statement was made:

"MR. WELLS: Your Honor, I'd like to state that I would make the same offer of proof with reference to this witness that we have discussed earlier. I'd like that noted in the record. I have no further questions."

■■ A reading of the numerous cases in which the necessity for offers of proof was considered indicates that the requisite formality of an offer of proof will depend upon the circumstances of the particular case. In order to preserve error alleged to have resulted from the exclusion of evidence, an offer of proof is usually necessary, and if not properly made, any alleged error will be waived. (*Cf. Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022.) If required, the offer of proof must be made in a proper manner and show what the offered proof is, or what the expected testimony will be, by whom or how it was made, and what its purpose is. (*Simon v. Plotkin; cf. Pioneer Hi-Bred Corn Co. v. Northern Illinois Gas Co.* (1975), 61 Ill. 2d 6, 329 N.E.2d 228.) However, where it is obvious that a witness is competent to testify as to a particular fact, and it is obvious what his testimony will be if he is permitted to give it, an offer of proof is unnecessary and a statement by counsel may suffice. *Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 219 N.E.2d 588.

■■ In the case at bar it is our opinion that a formal offer of proof was unnecessary. Both court and counsel understood the character of the evidence to be presented by the witnesses. Further, defendants' objections were equally well known. In fact, it was counsel for defendants who pointed out to the court that the subject matter of the testimony of Mr. Larson was the basis for his previous motion *in limine* in which such evidence was excluded. Further, the testimony of Arthur Hannah falls into the same category. Although a formal offer of proof would have been far more preferable, it cannot be said that the nature of the testimony and defendants' objections were unknown. As stated by the court in *Schusler v. Fletcher*:

"[A]n offer of proof is unnecessary whenever the trial judge understands the objection and character of the evidence but will not admit such evidence. Gore v. Henrotin 165 Ill.App. 222, 227 (1911)." (74 Ill. App. 2d 249, 253, 219 N.E.2d 588, 590.)

Therefore, plaintiff has not waived the alleged error by failing to make a formal offer of proof.

■■ Plaintiff contends that evidence relating the turning of other trucks at the same intersection was admissible to show custom or trade usage and that evidence of other accidents or injuries was admissible to show knowledge or to show that the accident or injury was the result of a common cause. We do not agree. Although there are circumstances in which evidence of custom and trade usage is admissible, it may not be used to prove the negligence of this defendant.

Plaintiff seeks to establish by an impermissible inference that evidence that trucks customarily crossed the center line of the route when making right turns at this intersection constitutes proof that the defendant driver also crossed the center line. Such a conclusion is refuted by the

testimony of two eyewitnesses who testified that when the collision between the trucks occurred, defendant's truck did not cross the center line. Proof by the introduction of evidence of unrelated occurrences, of an issue which a litigant has the burden of establishing, has never been permitted. *Cf. Burroughs v. Comegys* (1885), 17 Ill. App. 653; *Schroeder v. Walsh* (1887), 120 Ill. 403.

■ Similarly, the trial court did not err in excluding evidence of prior collisions at the intersection where plaintiff's injury occurred. Plaintiff did not make an offer of proof of a character sufficient to entitle him to now complain that this evidence was erroneously excluded. It would have been necessary for him to have offered the proof that under comparable conditions trucks of the same size and weight as that of defendants were involved in collisions at the intersection when it was in the same condition as it was when plaintiff was injured. (*Cf. Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 300 N.E.2d 771.) Since plaintiff has failed to make such a showing in his offer of proof, his objection in this respect must be considered as having been waived. Nevertheless, although it is unnecessary for us to consider whether evidence of prior collisions was admissible, it is our judgment that they were not. Again, plaintiff seeks to prove negligence on the part of defendant Horton by the inference that he must have crossed the center line of the route if other trucks had done so in the past and been involved in collisions.

Plaintiff next contends that it was error to sustain defendants' objection to inquiries concerning defendant Horton's refusal to perform certain tests. The record indicates that before trial, plaintiff retained an expert and made arrangements for him to examine the tractor-trailer in question. Defendants made the truck available for examination, during which plaintiff's expert requested Horton to execute certain turns so he could take measurements and evaluate the truck's turning requirements. On advice of counsel, Horton refused to drive the truck through the turns. At trial, the court sustained defendants' objections to plaintiff's questions concerning Horton's refusal to make these turns. Plaintiff urges that this was error, citing 29 Am.Jur.2d *Evidence* §297, at 341 (1967), as indicating that:

> "Evidence in a civil action has generally been held admissible to show that a party to the action refused to permit the examination or inspection of property or articles under his control."

According to plaintiff, this theory is reflected in IPI Civil No. 5.01 (2d ed. 1971), which provides that the failure to produce evidence within the control of one party and not equally accessible to the other party may give rise to the inference that such evidence would be adverse to the party having control of the evidence.

■ We find that plaintiff's reliance on this principle is misplaced.

Defendants did not refuse to permit an examination of the truck involved in the collision. We agree with defendants that having made the truck available for inspection, there is no duty on the part of defendants to actively engage in demonstrations with the truck. Therefore, the court did not err in sustaining defendants' objection to this line of questioning. The scope of cross-examination was within the trial court's discretion, and the trial court will be reversed only if such discretion has been clearly abused and the abuse materially affected the result of the trial. (*Olofsson v. Wood* (1959), 23 Ill. App. 2d 32, 161 N.E.2d 681.) We find no abuse of discretion in this regard in the instant case.

Plaintiff contends that it was error to prohibit his using answers to interrogatories during cross-examination. During cross-examination of defendant Horton, plaintiff inquired:

"Q: The turning radius of that tractor with that trailer is twenty-five feet?

A: I wouldn't really know.

Q: Well, the defendant, in answer to supplemental interrogatories, gave the dimension of twenty-five feet as the turning radius of that tractor and trailer.

Do you have any argument with that?

A: The who?

Q: The defendant in this case, you and Missouri Pacific Truck Lines.

MR. DAHLMANN: I object to this form of cross-examination.

THE COURT: Sustained."

■■ Defendants contend that plaintiff failed to specify the grounds he is urging for the admission of the interrogatories in this manner and that Horton did not sign the interrogatories nor give an inconsistent answer; therefore, there was no basis for using the interrogatories for impeachment or as an admission. We agree. The trial court did not abuse its discretion concerning the latitude allowed during cross-examination. *Olofsson v. Wood.*

■■ Plaintiff contends that it was error to exclude five photographs of the intersection which indicated the destruction of a pole that had been present at the time of the collision. It is undisputed that the intersection was changed in that an inclined pole present at the time of the accident had been destroyed when the photographs were taken. Plaintiff urges that this evidence of subsequent changes to the intersection was relevant to establish that the pole impeded the turning of tractor-trailers at the intersection. There was no evidence as to what happened to the pole; and it is uncontradicted that defendant Horton did not hit it. Horton and one of plaintiff's witnesses speculated that probably somebody hit it, but there is no showing of any of the circumstances surrounding its damage or

destruction. Plaintiff's contention is comparable to his argument concerning the court's refusal to permit evidence of custom or trade usage regarding the turning of other trucks and evidence of prior collisions at the intersection where plaintiff was injured. Plaintiff cannot establish that defendant Horton crossed the center line of the highway when the collision occurred by inferences drawn from photographs indicating the subsequent destruction of a pole under circumstances not shown by any evidence. The admission of photographs is addressed to the sound discretion of the trial court; and we find no abuse of that discretion in the instant case. *Cf. Brackett v. Osborne* (1963), 44 Ill. App. 2d 441, 195 N.E.2d 8.

Plaintiff finally argues that the cumulative effect of the exclusion of the evidence discussed separately above was a prejudicial denial of circumstantial evidence. Because there was a conflict of direct testimony, plaintiff contends that any error in refusing to admit circumstantial evidence cannot be categorized as harmless. Since we have not found any error in the exclusion of the various items of evidence complained of by plaintiff, it cannot be said that the cumulative effect of the refusals to admit certain evidence prejudiced the plaintiff or unduly influenced the outcome below.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., and KARNS, J., concur.