WILLIAM E. FRANK *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF BARRINGTON HILLS, Defendant-Appellant.

Second District    No. 81-385

Opinion filed June 2, 1982.—Rehearing denied June 24, 1982.

R. Marlin Smith and Wendy U. Larsen, both of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellant.

Joseph C. Owens, of Chicago, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Defendant, the village of Barrington Hills, appeals from an order of the McHenry County circuit court disconnecting plaintiffs' property from it. The village takes issue with the sufficiency of the evidence but also questions the procedure by which the Franks sought to correct the errors allegedly contained in the transcript of the trial.

Disconnection was sought pursuant to section 7—3—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1965, ch. 24, par. 7—3—6), which provides that owners of land within a municipality may have such territory dis-

connected if it meets certain requirements. The parties' dispute arose over two of these: the territory may not be "contiguous in whole or in part to any other municipality"; and if the territory is disconnected, "the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted." Ill. Rev. Stat. 1965, ch. 24, par. 7—3—6(1), (6).

Before we turn our attention to the findings of the court's final order regarding these two requisites, we must first consider whether it was proper to permit the filing of what the village describes the Franks' "second post-trial motion" requesting amendment of the transcript.

The history of this action begins on October 19, 1966, when the Franks filed a petition seeking disconnection of 82.75 acres from the village. A hearing was held on the petition on April 28, 1972. On August 23, 1973, the court dismissed the petition and on February 8, 1974, the court entered judgment for the village. The order entering judgment stated that the Franks failed to prove that if the tract were disconnected the growth prospects and the planning and zoning ordinances of the village would not be unreasonably disrupted. The court added that it made no finding as to whether the tract was contiguous to another municipality.

On March 8, 1974, the Franks filed a post-trial motion. In it they argued that there was substantial evidence that disconnection would not unreasonably disrupt the growth prospects and zoning and planning ordinances of the village. The Franks also contended that there was sufficient evidence to show their property was not contiguous with another municipality.

On August 3, 1977, the trial court circulated to the parties a document entitled "Rulings" denying the Franks' post-trial motion. In this document the court noted that the statute requires that growth prospects and planning and zoning ordinances must not be "unreasonably disrupted." The court noted that an expert witness had testified on behalf of the Franks that disconnection would not "*disturb*" the growth of the village. The court suggested it found the evidence lacking because the witness stated growth would not be *disturbed*, instead of using the statutory word, *disrupt*. The court added, however, that the witness gave an opinion only on the effect disconnection would have on the village's growth and not on its planning and zoning ordinances. The court then stated that considering the growth and the planning and zoning ordinances separately it found the weight of the evidence is that growth prospects would not be disrupted. However, it found the Franks had presented no evidence that the planning and zoning ordinances would not be unreasonably disrupted. The court found that the Franks failed to prove that "if disconnected, the growth prospects and plan and zoning ordi-

nances * * *, of such municipality will not be unreasonably disrupted." Ill. Rev. Stat. 1965, ch. 24, par. 7—3—6(6).

The court then made a finding about contiguity of the property with another municipality. It found the boundary of the Franks' land joined the boundary of the village of Algonquin for 40 to 50 feet within the intersection of Algonquin and County Line (Lake-Cook) Roads. Aside from the common boundary in the roadway the only contact between the village of Algonquin and the Franks' property was at a corner. The court found that the property was not contiguous with the neighboring municipality.

The court concluded that it was not shown the growth prospects and zoning and planning ordinances would not be unreasonably disrupted and ruled "The post trial motion is denied and the evidence stands dismissed." The court added, "Counsel for the village is requested to furnish for entry by the Court, a final order."

In September 1979 the attorney for the village withdrew and the firm presently representing it was substituted. On October 10, 1979, the village moved that the court enter an order denying the Franks their 1974 post-trial motion. That same day the Franks filed without notice a document entitled "Answer to Motion to Enter Judgment and Petition." The petition requested reconsideration of the August 3, 1977, ruling, alleging that the court reporter had discovered an error in a transcript of the hearing: what had been transcribed as "disturb" in the witness' testimony should have been "disrupt." The testimony of plaintiffs' expert witness, therefore, should have read that "[disconnection] in no way would disrupt said growth." Submitted with the petition was an affidavit by the court reporter acknowledging the error.

On October 10, 1979, the court entered its "Final Judgment." Having considered the Franks' post-trial motion and having reviewed the record the court found that the growth prospects and planning and zoning ordinances of the village would not be unreasonably disrupted by disconnection of the property, and that the property was not contiguous with any other municipality. The court did not state whether it considered the transcript of testimony as originally transcribed or as "corrected" by the court reporter's affidavit. The court then ordered the Franks' property disconnected from the village.

The village filed a post-trial motion on November 9, 1979, contending that the court had no jurisdiction to consider the Franks' October 10, 1979, "Answer to Motion to Enter Judgment and Petition" and that even if the court had such authority and considered the record as "corrected" the manifest weight of the evidence still did not favor the Franks' position.

The court denied the village's motion and the village then appealed.

The village argues that the trial court erred by considering the

Franks' "second post-trial motion" as the village calls it, of October 10, 1979, entitled "Answer to Motion to Enter Judgment and Petition"; that the court erred in considering the court reporter's affidavit regarding her error; that the court erred in reversing its prior ruling and finding that the village's planning and zoning ordinances would not be disrupted; and finally, that the court erred in finding the Franks' property was not contiguous with the village of Algonquin.

The village argues that the trial court's August 3, 1977, "Rulings" was a final judgment addressing the Franks' 1974 post-trial motion. It further argues that the October 1979 "Answer to Motion to Enter Judgment and Petition" was an impermissible second post-trial motion, which a court has no authority to consider.

■■ Clearly, one may not file successive motions to reconsider a judgment, each filed after the denial of the previous one. *Rose v. Centralia Township High School District No. 200* (1978), 59 Ill. App. 3d 606, 375 N.E.2d 1039.

■■ The "Rulings" of August 3, 1977, announcing the court's decision regarding the Franks' 1974 post-trial motion is not a final judgment, however. Supreme Court Rule 272 (36 Ill. 2d R. 272) provides that "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed." Here the court in its "Rulings" stated its decision with the words, "The post trial motion [of March 1974], is denied and the evidence stands dismissed." The court added, however, that "[c]ounsel for the village is requested to furnish for entry by the Court, a final order." This last sentence shows that the "Rulings" was not a final order.

■■ The announcement of a judgment, without that judgment being yet filed, does not lessen the trial court's jurisdiction to consider other motions or to enter other orders or judgments. (*Cities Service Oil Co. v. Village of Oak Brook* (1980), 84 Ill. App. 3d 381, 383-84, 405 N.E.2d 379.) A trial court is recognized to have the discretionary power to allow a party to amend or supplement its post-trial motion with additional issues. *City of Chicago v. Greene* (1970), 47 Ill. 2d 30, 264 N.E.2d 163, *cert. denied* (1971), 402 U.S. 996, 29 L. Ed. 2d 162, 91 S. Ct. 2180.

The village argues that nonetheless the Franks' "Answer * * * and Petition" should not have been considered because the village never received notice of it and there was no hearing on it.

In *Chicago, Milwaukee & St. Paul Ry. Co. v. Walsh* (1894), 150 Ill. 607, 37 N.E. 1001, the supreme court stated that after the term in which the record was made had expired an amendment to a record can be made only by bringing the parties into court by the service of proper notice.

In *People v. Flannigan* (1947), 398 Ill. 55, 57-58, 74 N.E.2d 801, where

a party sought amendment of the certified transcript of the record the supreme court stated the rule on obtaining amendments to court records:

"It has repeatedly been held that court records are so conclusive and final that the existence of the record or facts recited therein cannot be contradicted or impeached by the affidavits of persons, either parties to the record or bystanders, or by the notes of a stenographer who reported the proceedings, or on the memory of the judge who presided when the record was made. [Citations.] The record as furnished in the transcript stands as the record of the court until it has been properly corrected. * * * Where the application is to amend the record of a judgment finally recorded, after the term of the rendition and entry of the judgment, there must be official memorandum made at the time of the proceedings from which the actual evidence of the prior proceeding can be clearly ascertained and known. A proper petition to the court to redocket the case with a full hearing would enable the court to determine from exhibits and documentary evidence, and from a complete investigation as to whether or not the minutes, notes or memorial paper appearing of record would justify a corrected judgment to show the real judgment in fact rendered. If there be an adverse ruling, an appeal might be taken from the order, while, on the other hand, if the suggested correction was shown, the judgment as corrected would stand and would come to [the reviewing] court properly certified for consideration on the common-law record."

See also *People ex rel. Sweitzer v. City of Chicago* (1936), 363 Ill. 409, 2 N.E.2d 330; *People v. Ambolo* (1931), 343 Ill. 480, 175 N.E. 776; *People v. Fulimon* (1923), 308 Ill. 235, 139 N.E. 396.

The basis for any change made by or under the direction of the court must come from minutes, notes or other documents that have remained in the possession of the court. (*People v. Weinstein* (1921), 298 Ill. 264, 271-72, 131 N.E. 631.) The amendment of a record cannot rest upon the recollection of the judge or other persons or be based upon *ex parte* affidavit or testimony. *People v. Weinstein.*

■■ Final judgment was rendered in the trial court on February 8, 1974. We think the fact that post-trial motions were filed and considered thereafter does not alter the rule that any decision upon a proposal to amend a record after judgment must be made pursuant to a hearing and the examination of documents, notes or other records in the court file. We think that particularly in a case such as this, where the post-trial proceedings were protracted for years, and where the party urging amendment sought a judgment to be altered to its favor on the basis of the proposed amendment, any procedure to amend a transcript must involve a hearing in which the court would determine from documents and notes kept in its

files whether amendment of the transcript is warranted. The affidavit from the court reporter is insufficient basis for an amendment.

There was no hearing; in fact the court did not enter any order addressing the Franks' motion. We do not know whether the court considered the transcript as originally rendered, or in "amended" or "corrected" form.

Although we conclude that a hearing must be held when a party seeks amendment of a record we think that here, where the proposed change involves only the substitution of the word "disrupt" for the similar term "disturb", we can review the October 10, 1979, order with a view to whether it is supported by the manifest weight of the evidence. The use of the one or other word does not affect the weight of the evidence. If disconnection would not "disturb" the growth of the village, it surely would not "disrupt" it, either.

A map of that part of Barrington Hills containing the Franks' property and showing how the Franks' property adjoins the village of Algonquin is provided below:

(not drawn to scale)

The evidence shows that the village is planned and zoned mainly for large lot residences. The smallest permissible residential lot is one acre. Most of the area zoned for residences is zoned for five-acre or larger estates. Plaintiffs' land is zoned in this way. A very small area is zoned for business and light industry. A planning and zoning consultant who testified for the village estimated that less than .5 percent of Barrington Hills is not residential.

The Franks' land projects westward from the village. Land to the north, west and south of their land is unincorporated. The eastern edge of the parcel is bounded by Haegers Bend Road, an extension of Route 25. The southern boundary is in Lake-Cook Road. A city planning and zoning consultant testifying for the Franks estimated that the property consisted of .5 percent of the area of the village. If the property were disconnected county zoning would apply, and the Franks' property could be used for 10,000 square-foot residential lots.

There is some commercial development along Algonquin Road, to the south and west of the property, and some light industry is to be found northwest of the property. There is little development in the village to the east of the Franks' property.

The village clearly planned for a low-density slow-growth community. The village also apparently fears a growth of commercialization on its border should the property be disconnected. The evidence shows that under the county zoning ordinance, which would apply to the Franks' property if it were rendered unincorporated land, the property would be zoned for 10,000-foot residential lots. Fears of commercialization appear unfounded. The density will, of course, be much greater than allowed by the village but disconnection would result in the five-acre zoned land to the east to be separated from the Franks' land by Route 25, a logical dividing line. The growth of the village will clearly not be disrupted; the village plainly is not interested in a great increase in population. Moreover, as the property is zoned for five-acre residential parcels, at most the village would be potentially deprived of only 16 families.

We conclude also that the manifest weight of the evidence shows that the zoning and planning of the village will not be disrupted. The zoning map of the village shows over 90 percent of the land within the village is zoned for five-acre or greater residential parcels; the disconnection of the Franks' land will remove a minute portion of the land so zoned. Further, the property is not zoned for use that would be unique in the village. The loss of the Franks' land would not materially alter the proportions of village lands classified for various uses. Disconnection would take a small part of the village's residential land, not a large proportion of the land planned for business, commercial or industrial uses. The planning and

zoning of the village, therefore, would not be unreasonably disrupted by the disconnection of this property.

The village also disputes the court's finding that the property was not contiguous with another municipality. The southwest corner of plaintiffs' property extends into the intersection of Lake-Cook and Algonquin Roads. The village of Algonquin extends southeasterly down Algonquin Road, meeting the Franks' property within the intersection for a short distance along the Franks' western boundary. In his testimony William A. Frank admitted that he did not know the extent of the common boundary between his property and the village of Algonquin. Surveys of the property admitted into evidence show that the property extends southward to about the middle of Lake-Cook Road. The western boundary of the property adjoins the boundary of the village of Algonquin at the intersection for only the short distance from the edge of Algonquin Road southward to approximately the middle of Lake-Cook Road. Defendant argues that this common boundary makes the property contiguous with the village of Algonquin and thus makes disconnection impermissible.

Contiguity exists where tracts of land touch or join in a "reasonably substantial physical sense; * * * the line of demarcation between the reasonableness or unreasonableness of a contiguity must be determined on the facts of each case." (*In re Annexation to Village of Downers Grove* (1981), 92 Ill. App. 3d 682, 684-85, 416 N.E.2d 292; *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 352, 167 N.E.2d 169.) A substantial common boundary or common border of reasonable length satisfies the requirement of contiguity. (*People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 256 N.E.2d 653; *Wescom, Inc. v. Woodridge Park District* (1977), 49 Ill. App. 3d 903, 364 N.E.2d 721.) The situation at the time of the hearing controls when determining for the purpose of disconnection whether two pieces of property are contiguous. (*In re Village of Capitol Heights* (1968), 41 Ill. 2d 256, 258, 242 N.E.2d 247.) The finding of the trial court as to contiguity or the lack of it will not be disturbed on review unless it is contrary to the manifest weight of the evidence. *In re Annexation to Village of Downers Grove.*

■■ Adopting a "common-sense interpretation as to whether the tracts are contiguous as contemplated by the legislature" (*People ex rel. Gray v. Village of Hawthorn Woods* (1960), 19 Ill. 2d 316, 318, 167 N.E.2d 176), we conclude that the court's determination that a common boundary whose length is no more than one-half the width of Lake-Cook Road does not make the property and the village of Algonquin contiguous is not against the manifest weight of the evidence.

The village points out that strips of land 50-feet wide and 33-feet

wide were not found to be isolated from a village when another piece of land was disconnected, leaving the strips projecting outward from the village. (*La Salle National Bank v. Village of Willowbrook* (1963), 40 Ill. App. 2d 359, 189 N.E.2d 690.) To find that narrow strips of land 33 feet and 55 feet wide are not isolated from the rest of a village is different from finding that 30 or 50 feet of common boundary fits the description of contiguity: a "substantial common boundary." (*People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 284, 256 N.E.2d 653.) A determination that the narrow strips were not isolated is not necessarily a determination that a common boundary of those lengths would permit annexations or disconnections at those points. But *cf. In re Village of Buffalo Grove* (1970), 128 Ill. App. 2d 261, 268 n.1, where contiguity and nonisolation were likened to each other.

In *People ex rel. Gray v. Village of Hawthorn Woods* (1960), 19 Ill. 2d 316, 167 N.E.2d 176, two parcels of property joined by a common boundary of 128.7 feet were found to be contiguous. In *People ex rel. Cherry Valley Fire Protection District v. City of Rockford* (1970), 120 Ill. App. 2d 275, 286, 256 N.E.2d 653, a shared boundary of 20 feet was not a "substantial common boundary." Here the trial court determined the short boundary between the Franks' property and the village of Algonquin was not substantial enough to make them contiguous. We do not think this determination is against the manifest weight of the evidence.

We conclude that the findings that the conditions for disconnection were met are not against the manifest weight of the evidence, and we accordingly affirm the judgment of the McHenry County circuit court.

Affirmed.

UNVERZAGT and VAN DEUSEN, JJ., concur.