DOLORES G. WILSON, Plaintiff-Appellant, *v.* THE CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 82—1745

Opinion filed September 29, 1983.

Anthony M. Colantoni, of McDowell and Colantoni, of Chicago, for appellant.

John O. Demaret, of Chicago Transit Authority, and Edward J. Egan, both of Chicago, for appellees Chicago Transit Authority and Georgia R. Harris.

Stanley Garber, Corporation Counsel, of Chicago (Jerome A. Siegan and Robert J. Dargis, Assistant Corporation Counsel, of counsel), for appellees the city of Chicago and William Galioto.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Dolores G. Wilson, brought a complaint against defendants to recover damages for personal injuries sustained in an accident with a Chicago Transit Authority (CTA) bus. At the close of the jury trial, she was awarded $12,500. On appeal, plaintiff raises the following issues for review: (1) whether the trial court erred in directing a verdict in favor in the CTA and its agent, Georgia Harris; (2) whether the trial court erred in limiting the testimony of her medical expert; and (3) whether the trial court erred in refusing two of her jury instructions.

We affirm.

At trial, Richard Kowitz, a Chicago policeman, testified that he investigated the accident which occurred on June 28, 1981, involving plaintiff and a CTA bus. The accident occurred at 2:12 p.m. He arrived at the scene within three minutes. More than one policeman was directing traffic at the intersection of Clark and Addison streets in Chicago, Illinois, but Kowitz did not know the exact number. The victim was lying between the bus and the center of Clark Street. She

was 25 to 30 feet north of the crosswalk at the left side and near the rear wheel of the bus.

Officer Kowitz took witness statements from Georgia Harris, Robert Thomas and Officer Galioto. When Kowitz asked Harris, the bus operator, how fast she was driving, she replied five to seven miles per hour, but on page two of her statement she said the bus was stopped. Thomas said that he was on the northeast corner of Clark and Addison when he saw a woman run across the street into the side of the bus.

Plaintiff called Robert Thomas, a CTA bus driver, as an adverse witness. Thomas testified that he was standing on the northwest corner of Clark and Addison for about a minute and a half before he observed the accident. A policeman was directing pedestrians, another was directing buses and a third was in the middle of the intersection. The policeman directing pedestrians was watching the policeman in the intersection and not the one directing buses. A CTA bus traveling north on Clark Street, stopped at Addison and then continued when a policeman directed it through the intersection. When the bus was 15 to 20 feet through the intersection, a man ran in front of the bus which stopped. Thomas was 15 to 16 feet north of the crosswalk. Plaintiff walked at a rapid pace from the northwest corner of Clark and Addison into the bus which had stopped for 15 to 40 seconds. Plaintiff had been looking over her shoulder and apparently talking to a policeman as she walked. After the collision, she fell to the ground, hitting her head. She lay about 10 to 15 feet north of the crosswalk. Thomas did not hear a bus horn before the accident.

Donald Deep, a CTA supervisor, was also called as an adverse witness. Deep testified that he was standing on the southwest corner of Clark and Addison when Thomas told him about the accident. Thomas had been standing on that corner for about 15 minutes before he mentioned the accident. Deep observed the accident scene. Plaintiff was about 10 feet north of the crosswalk and the bus was 15 to 20 feet north of her. The bus driver told Deep that the bus was moving slowly at the time of the accident, but she did not mention that a man had run in front of the bus.

Plaintiff testified that she lived near the scene of the accident. On June 28, 1981, she left her house and walked east. When she arrived at the intersection of Clark and Addison, a policeman indicated that she stop. Then he indicated that she could cross the street. The next thing plaintiff remembered was being in a hospital emergency room. Plaintiff suffered injuries to her head, shoulder, chest, arm, hand and hip. She was hospitalized for nine days and had facial surgery. After

the accident she suffered from headaches, double vision, numbness in her face and memory lapses. She could not care for her invalid husband and their two children, who had medical conditions, as well as she did before the accident.

Don Miller, a physician and surgeon, was qualified as a medical expert. He examined plaintiff and her hospital records. Plaintiff complained of pain, numbness, dizziness, forgetfulness and inattention. In Dr. Miller's opinion, plaintiff's complaints could have been caused by her contact with the bus. Damage to her nerves was permanent. The trial court refused to allow plaintiff's counsel to ask Dr. Miller if it was more likely that plaintiff walked or ran into the side of the bus, or more likely the moving bus struck her. The trial court reasoned that Miller was not qualified as an "accidentologist," that is, a person who reconstructs accidents.

William Galioto, a Chicago policeman, was called by plaintiff as an adverse witness. He was on duty on June 28, 1981, at the accident scene. He was standing in the intersection of the northwest corner of Clark and Addison in the center of the crosswalk. Two other policemen were also directing traffic. When he first observed plaintiff, she was eight to 12 feet north of him and six to eight feet from the intersection. Galioto did not observe her talking to anyone and he never heard a bus horn or saw anyone in front of the bus. He did not see plaintiff impact with the bus, but he saw her fall backward while the bus was moving at five to 10 miles per hour. Then the bus stopped. Plaintiff fell six to eight feet behind the front wheel well of the bus, about 30 feet north of the crosswalk.

Georgia Harris, the CTA bus driver, was called by plaintiff as an adverse witness. After driving across the intersection of Clark and Addison, she stopped when a man ran in front of the bus. At that time, the bus was 48 to 52 feet from the intersection, and the rear of the bus was eight to 12 feet north of the crosswalk. Harris checked her mirror and looked around. When she was about to proceed, she heard a thump. She saw a woman lying on the ground toward the rear of the bus.

Joseph Bongiorno, a psychiatrist, examined plaintiff. He stated that plaintiff suffered from retrograde amnesia, that is, memory loss for events immediately preceding the trauma. In his opinion, plaintiff's depression and traumatic neuroses were caused by the accident.

Deana Nannix, the owner of a private nursing service, estimated the cost of providing nursing care to plaintiff's family.

Plaintiff rested and defendants moved for directed verdicts. The trial court sustained the motion for the CTA and its agent Harris; it

denied the motion with respect to the city of Chicago and Galioto. Then the defense rested. The jury found that plaintiff suffered damages of $250,000 but reduced the award 95% to $12,500 because of plaintiff's contributory negligence. Plaintiff appeals.

■ The first issue raised by plaintiff is whether the trial court erred in directing a verdict in favor of the CTA and its agent, Georgia Harris. Plaintiff argues that there were substantial factual disputes and questions of witness credibility which were issues for the jury to resolve. There was a dispute as to whether the bus had stopped or was moving, a dispute as to the location of the impact, and a dispute as to how the accident occurred. Plaintiff urges that the jury could have circumstantially inferred that plaintiff, having intended to go to the northeast corner of the intersection, began to walk in the crosswalk upon the signal of the policeman, was somewhere within the crosswalk at the time of the collision with the bus, and was knocked 10 feet to the north by the impact.

Even if we accept plaintiff's argument that there were disputed issues of fact, these facts are not material—they do not establish negligence by the bus driver. In her complaint, plaintiff alleged that defendant driver failed to yield the right of way to a pedestrian, that she drove at a speed greater than what was reasonable and proper, that she failed to warn by horn of her approach, that she failed to keep a proper lookout, and, finally, that the bus driver failed to see and observe plaintiff when she could and should have done so. Nothing in the testimony at trial suggested that the bus driver did not exercise proper care in driving the bus. The bus driver stated that she first became aware of plaintiff after she heard a thump and saw, in her mirror, plaintiff lying on the ground.

The standard for directing a verdict is that all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) This standard is to be employed in a jury trial whether the motion for a directed verdict is considered at the close of all the evidence, or at the close of plaintiff's case. (*Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 491, 422 N.E.2d 925, 929.) Substantial factual disputes presented by the evidence require the assessment of witness' credibility or election between conflicting evidence, which falls within the jury's function, and it is then improper to direct a verdict. *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 491.

In our opinion, the trial court properly directed a verdict in favor

of the CTA and its agent. There were no substantial factual disputes for the jury to resolve with respect to the CTA. A verdict against the CTA could not stand because plaintiff presented no facts establishing negligence by its agent.

■ Plaintiff next argues that the trial court erred in limiting the opinion testimony of her expert witness. Plaintiff wanted Don Miller, a physician, to answer the question of whether it was more likely that plaintiff walked into the bus or more likely the moving bus struck her. The trial court refused to allow the question to be asked because Miller was not qualified as an accidentologist. Plaintiff further argues that she should have been allowed to expand Miller's qualifications in order to lay the foundation to qualify him as an expert in reconstructing accidents.

We reject plaintiff's arguments. Expert testimony is permitted when (1) the opinion of the witness is distinctly related to a science, profession, business or occupation and is beyond the knowledge or experience of an average juror; (2) the witness has sufficient skill, knowledge or experience in that field so that his opinion will aid the trier of fact in the search for truth; and (3) the state of the art of scientific knowledge permits a reasonable opinion to be asserted by an expert. The qualification of a witness to testify as an expert is within the sound discretion of the court. (*First National Bank v. Sousanes* (1981), 96 Ill. App. 3d 1047, 1054, 422 N.E.2d 188, 193.) Plaintiff's examination of Miller qualified him as a medical expert but not as an expert in the reconstruction of accidents. We hold that the trial court did not abuse its discretion in limiting the testimony of plaintiff's expert witness.

■ Finally, plaintiff argues that the trial court erred in refusing two of her proposed instructions which stated that the city was liable on an agency theory if the jury found its unknown agents and employees liable, and that the city and its unknown agents and employees were negligent in signaling a bus to proceed when plaintiff was crossing the street. The trial court refused the instructions because no evidence supported the charges. Plaintiff cites as evidence of unknown agents the testimony that several police officers were at the intersection. She also claims there was evidence to suggest that the bus was waved through the intersection at the same time plaintiff was directed to cross the street. If the jury had been allowed to consider additional acts or omissions of unknown agents of the city, it might have decreased plaintiff's contributory negligence and increased her damages.

We reject plaintiff's argument. It suggests that because she was

injured defendants must have been negligent. To justify giving an instruction, all that is required is that there be some evidence in the record to support the theory set out in the instructions. (*Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 1095, 410 N.E.2d 266, 273.) We have examined the record and find no evidence that an unknown agent of the city performed a negligent act which proximately caused plaintiff's injuries. Therefore, we hold that the trial court did not err in refusing plaintiff's proposed instructions.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P.J., and JIGANTI, J., concur.