FIRST NATIONAL BANK OF MOUNT PROSPECT, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF MOUNT PROSPECT *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—89—0284

Opinion filed March 28, 1990.—Rehearing denied June 15, 1990.

856

Pederson & Houpt, P.C., of Chicago (Arthur M. Holtzman and Joan G. Stevens, of counsel), for appellants.

Burke, Wilson & McIlvaine, of Chicago (Tom W. Stonecipher, Keith J. Shuttleworth, and Clinton J. Wesolik, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

On August 22, 1988, plaintiffs, the owners and holders of legal title to 23 parcels of real estate located within the corporate limits of the Village of Mount Prospect (Mt. Prospect), filed a second amended complaint seeking, in count I, disconnection of their property from Mt. Prospect (Ill. Rev. Stat. 1987, ch. 24, par. 7—3—6) and, in count II, an order requiring Mt. Prospect to maintain Kenneth Drive, a public street traversing certain of the property owned by plaintiffs. After a bench trial on count I only, the trial court entered an order of disconnection on December 7, 1988. On December 9, 1988, defendants, which included certain Mt. Prospect officers and officials, filed a motion to vacate grounded upon the trial court's prohibition of opinion testimony at trial by a former Mt. Prospect employee. On December 28, 1988, the trial court denied the motion to vacate. Defendants appeal therefrom and the disconnection order in plaintiffs' favor. Count II, which the trial court dismissed on December 12, 1988, is not involved in the appeal.

■■ Section 7—3—6 of the Illinois Municipal Code allows the disconnection of property lying within the corporate limits of a municipality where: (1) the property consists of 20 or more acres; (2) the property is located on the border of the municipality; (3) disconnection will not isolate any part of the municipality from the remainder; (4) disconnection will not unreasonably disrupt the municipality's growth prospects, plan and zoning ordinances, if any; (5) disconnection will not substantially disrupt existing municipal service facilities; and (6) disconnection will not unduly harm the municipality through the loss of future tax revenue. Prior to trial, the parties stipulated that the only requirement for disconnection in issue, in this case, was the fourth.

The following facts were established by the pleadings and/or the testimony at trial and are not in dispute. Mt. Prospect voluntarily annexed 3 of the 23 parcels involved in 1984. It involuntarily annexed the remaining 20 parcels on August 4, 1987. Before annexation, the property involved was located in unincorporated Cook County and was designated for industrial use under the county's 1976 comprehensive land use and policies plan. Approximately 85% of the property is developed. This development occurred before annexation. Mt. Prospect has zoned the majority of the property in the lowest density residential classification since annexation. Three plain-

tiffs requested and received rezoning of their parcels from Mt. Prospect to its general industrial classification to allow further industrial development. The remaining parcels constitute nonconforming uses under Mt. Prospect's zoning ordinance.

The property involved is included in Mt. Prospect's 1981 comprehensive land use plan. It lies entirely within and comprises approximately one-third of that part of the property which Mt. Prospect designated as Area 6 in its official zoning map. Mt. Prospect's comprehensive plan calls for industrial use of the property within Area 6.

On appeal, defendants first contend that the manifest weight of the evidence reveals that, contrary to the trial court's conclusion, disconnection of plaintiffs' properties would unreasonably disrupt Mt. Prospect's growth prospects, plan and zoning ordinances.

Specifically, defendants assert that disconnection will result in a loss of a large portion of Mt. Prospect's territory designated for general industrial development under its 1981 comprehensive land use plan. (See *Frank v. Village of Barrington Hills* (1982), 106 Ill. App. 3d 747, 436 N.E.2d 276.) They further assert that the loss of plaintiffs' properties would materially alter the proportion of Mt. Prospect's lands designated for various uses. (*Frank*, 106 Ill. App. 3d 747, 436 N.E.2d 276.) Thirdly, they assert that disconnection will unreasonably disrupt the redevelopment and intensification potential of plaintiffs' properties. Defendants base this assertion on the testimony of their expert witness that at least 15% of the property involved is available for first-time development and that the remaining 85% is available for further development by either developing current uses to a greater intensity or removing the current uses and redeveloping the properties to a greater extent than before. Defendants also rely on Mt. Prospect's establishment of an office-research zoning district, a new zoning classification allowing a type of industrial development not previously permitted.

Equating the potential of plaintiffs' properties for first-time or intensified development or redevelopment to "current plans for future development," defendants rely on *In re Disconnection of Certain Territory From the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 461 N.E.2d 1019, to assert that such plans are within the meaning of "growth prospects" and "plans" as they relate to disconnection.

Defendants assert that Mt. Prospect's growth prospects and plans for the property involved are addressed in its 1981 comprehensive land use plan. The 1981 comprehensive land use plan recom-

mends that the property be used for a mixture of low and medium density multifamily residential, industrial office and general industrial uses. Defendants further assert that Mt. Prospect has taken several steps to affirmatively implement its 1981 comprehensive land use plan and, thus, to realize its growth prospects. These steps are: (1) involuntarily annexing certain plaintiffs' parcels; (2) granting several zoning and development requests by certain plaintiffs; (3) making several changes to Mt. Prospect's zoning ordinance consistent with its growth prospects and plans as set out in the comprehensive plan: (a) establishing an entirely new "Office-Research" zoning district; (b) establishing a new sign code setting higher standards; (c) revising the development code to ensure that the development of its industrial areas progresses consistently ,with plans and goals outlined in the comprehensive plan; and (d) issuing industrial revenue bonds for properties in Area 6.

■■ ■ In evaluating the merits of defendants' appeal, we must keep in mind that an order of disconnection cannot be disturbed unless it is contrary to the manifest weight of the evidence. (*Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 527 N.E.2d 1273; *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 225 N.E.2d 33.) A corollary of this standard is that the disconnection statute is liberally construed in favor of disconnection, if its requirements are met. *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 915, 527 N.E.2d 1273.

We believe that liberal construction in favor of disconnection applied to the disconnection statute concomitantly requires a narrow construction of such terms as "growth prospects" and "plans" as used in the disconnection statute. Only such a construction can explain the rules followed by Illinois courts that it is the state of events at the time of trial that control the right to disconnection, not a state of events that a municipality might desire, and that a municipality cannot defeat a disconnection order on the ground that it frustrates its future designs (*Indian Valley Golf Club, Inc.*, 173 Ill. App. 3d at 919; *In re Disconnection of Certain Territory From the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 971, 461 N.E.2d 1019; *La Salle National Bank v. Village of Willowbrook* (1963), 40 Ill. App. 2d 359, 362, 189 N.E.2d 690), notwithstanding that "growth prospects" seems to call for consideration of a municipality's future plans for the property sought to be disconnected. Buttressing this conclusion is the supreme court's recent holding that neither the future development of the site sought to be disconnected nor the fu-

ture development of a village is a proper consideration under the "growth prospects" prong of the disconnection statute. *Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146.

■■ From the foregoing cases, we conclude that a narrow construction of "growth prospects" is proper and that such a construction requires a finding that disconnection would not unreasonably disrupt such prospects unless a municipality comes forward with evidence of existing definite, concrete and approved plans to further develop the property sought to be disconnected. For example, in *Machesney Park*, the court observed, in rejecting the same contention made by defendants here:

> "[A]lthough a portion of the land was currently zoned for planned community development under a special use permit, the permit would expire by its own terms in November 1984 if construction is not commenced by that time. Development of the land is apparently discretionary with the owner who, at the time of the hearing, had met none of the conditions of the permit, had not begun any construction on the property, and had no plans for its development. Upon termination of the special use permit the zoning would revert back to agricultural. Under these circumstances, we cannot conclude that the zoning ordinances would be unreasonably disrupted." (*Machesney Park*, 122 Ill. App. 3d at 970.)[1]

In view of defendants' failure to come forward with some evidence of definite and approved plans for the development of plaintiffs' properties, we cannot conclude that the trial court's disconnection order was contrary to the manifest weight of the evidence.

In this regard, we believe that the mere potential of plaintiffs' properties for first-time or intensified development or redevelopment and the mere steps Mt. Prospect has taken to realize that potential through its 1981 comprehensive plan and changes to its concomitant ordinances are unavailing to show that disconnection would unreasonably disrupt Mt. Prospect's growth prospects, plans and zoning ordinances. All that Mt. Prospect's efforts to implement its 1981 comprehensive plan, which, we will assume, has as its main goal the realization of the development potential of plaintiffs' properties, have

---

[1]Defendants assert that, by noting the absence of any plans for the development of the property involved therein, the *Machesney Park* court considered "current plans for future development" as within the meaning of growth prospects and plans. Even if correct, we do not believe that Mt. Prospect's efforts to merely facilitate the future industrial development of the properties involved amount to "current plans."

accomplished is to facilitate that development. They have not resulted in any presently existing definite, concrete and approved plans to actually develop any part of the property involved.

Moreover, Mt. Prospect cannot avail itself of the rezoning obtained by some owners of the properties involved from the residential classification to which they were subject upon annexation to show that it is presently carrying out its plan to develop those properties industrially. Like the development of the property involved in *Machesney Park*, the decision of some owners of the properties involved here to seek rezoning is purely discretionary with them. The fact that their discretionary development coincides with Mt. Prospect's plans for the area including these properties is purely fortuitous, not the result of those plans.

Nor are we troubled by the assertions that disconnection will eliminate a large portion of Mt. Prospect's territory designated for general industrial development and will materially alter the proportions of Mt. Prospect's land designated for all uses. See *Frank v. Village of Barrington Hills* (1982), 106 Ill. App. 3d 747, 436 N.E.2d 276.

Defendants' expert, Rolf C. Campbell, testified that plaintiffs' properties comprise one-third of Area 6, the only area in the village designated for general industrial development. Even so, we do not believe, as defendants seem to suggest, that one-third of a municipality's territory set aside for a particular zoning use is so large a portion that its loss constitutes an unreasonable disruption of its growth prospects, plans and zoning as a matter of law. Similarly, we do not believe, as defendants also seem to suggest, that the loss of that amount of such territory would so materially alter the proportions of a municipality's territory set aside for all purposes as to be an unreasonable disruption as a matter of law. The percentage of land set aside for any one use which will be lost by disconnection is a relatively simple matter of proof. However, the alteration of the proportions of land set aside for all uses, and a determination of the materiality of that alteration, requires more extensive proof, proof which was not adduced by defendants here.

While defendants do not raise the issue in the argument portion of their opening brief, it is apparent from the rather argumentative statement of facts portion thereof and their reply brief that defendants' second major contention on appeal is that the testimony of plaintiffs' expert, Lane Kendig, was neither competent nor credible. Defendants go to great lengths to demonstrate why Kendig was incompetent to testify as an expert generally and why their expert was

more credible on the specific issue before the court. However, we find defendants' arguments unavailing.

■ In *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 915, 527 N.E.2d 1273, the defendant village argued that the plaintiffs' expert's testimony was incredible and inaccurate, contradictory and inconsistent. It also argued, similarly to defendants here, that the expert's testimony revealed his lack of knowledge of the village's zoning and planning ordinances. The court rejected these arguments by noting that the credibility of witnesses and the resolution of inconsistencies in their testimony are matters for the trier of fact, it being in a far better position than a court of review, *vis-a-vis* those matters, and that a reviewing court cannot substitute its judgment thereon unless the findings are against the manifest weight of the evidence. (*Village of Long Grove*, 173 Ill. App. 3d at 919, quoting *Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 333-34, 478 N.E.2d 860.) *Village of Long Grove* is dispositive of defendants' contention that the trial court erred in admitting and relying upon Kendig's testimony.

Since the weight of an expert's opinion must be measured by the reasons given therefor and the facts marshalled in support thereof and since an expert's opinion is entitled to little weight where a factual basis is lacking (*St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill. App. 3d 165, 298 N.E.2d 289), defendants assert that the trial court should have given Kendig's testimony little weight.

Kendig testified that he had experience with disconnection cases in Lake and Kane Counties. In addition, Kendig has been retained by several Illinois local governments to write their comprehensive land use plans, zoning ordinances and subdivision regulations. Prior to opening his own land use consulting firm, he was the director of the department of planning, zoning and environmental quality of Lake County, Illinois, for seven years. In addition, he prepared for trial by reviewing Mt. Prospect's 1968, 1976 and 1981 comprehensive land use plans, the proposed 1988 revision to the 1981 plan, Cook County's 1976 comprehensive land use plan and the zoning ordinances of Mt. Prospect and Cook County. He further viewed the property on three separate occasions and aerial and ground level photographs of the area. As we have previously noted, defendants cite many inadequacies in the foundation for Kendig's testimony. However, those alleged inadequacies do not convince us that the trial court erred in admitting and relying upon Kendig's testimony.

In this regard, we must note that, unlike the situation in *Miche-*

*lin Tire Corp.*, we cannot independently conclude that the challenged expert testimony was impeached by the physical exhibits at trial and therefore entitled to little weight. Rather, we believe this case is governed by the rule that the admission of expert testimony, as well as the qualification of the expert in the first instance, is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. (See *Wilson v. Chicago Transit Authority* (1983), 118 Ill. App. 3d 714, 455 N.E.2d 195; *Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 418 N.E.2d 1079; *Phillips v. Shell Oil Co.* (1973), 13 Ill. App. 3d 512, 300 N.E.2d 771.) Judged by that standard, the trial court committed no reversible error in admitting and relying upon Kendig's testimony.

Lastly, defendants contend that the trial court erred in prohibiting Stephen Park, Mt. Prospect's former director of planning and zoning and its former village planner, from stating his opinion on the ultimate issue in this case. The trial court did so pursuant to an objection by plaintiffs that defendants had not disclosed Park as an expert witness as required under Supreme Court Rule 220(c) (107 Ill. 2d R. 220(c)). Defendants assert that they were not required to disclose Park as an expert witness under that rule because he was not a party to the lawsuit or an employee of Mt. Prospect at the time of trial. Plaintiffs assert, *inter alia,* that, even though Park was not a party or Mt. Prospect's employee at the time of trial, defendants were still required to disclose his identity as an expert under Rule 220.

On this issue, we find *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 539 N.E.2d 801, dispositive. The *Voyles* court reversed a trial court order barring the plaintiffs from introducing the expert opinion testimony of a former employee of one defendant. In doing so, the court relied upon *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, and *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 531 N.E.2d 51, which plaintiffs here attempt to distinguish on the facts.

Specifically, the *Voyles* court noted that, in allowing the testimony of an employee of a party in that case, the *Smith* court reasoned, in part, that a party is not surprised by the testimony of its opponent's employee who is also an occurrence witness and intimately involved in the subject of the litigation but is only surprised that the witness gives an expert opinion. Then, implicitly adopting the supreme court's rationale in *Tzystuck*, as noted in *Smith*, the *Voyles* court reasoned that, "[s]ince the witness' identity is discoverable early in the litigation process under general rules of discovery

(Supreme Court Rule 201 (107 Ill. 2d R. 201)), an employee 'who is intimately involved in the subject matter of the litigation need not be disclosed as an expert witness pursuant to Rule 220(b)(1).' [Citation.]" *Voyles*, 183 Ill. App. 3d at 836.

■ Notwithstanding that the *Voyles* defendant did not employ the plaintiffs' expert witness at the time of trial, the *Voyles* court held the *Smith* court's rationale equally applicable therein. The *Voyles* court noted that, similarly to the witness in *Smith*, the witness therein was: (1) employed by a party when the plaintiffs' cause of action arose; (2) intimately involved in the matter being litigated; (3) not retained as an expert for the purpose of litigation; (4) known to the parties long before trial; and (5) was equally available to all parties for purposes of discovering his testimony. It further noted that a sufficient foundation was established for the witness to render expert opinion testimony. Therefore, the *Voyles* court held that the plaintiffs were not required to disclose the witness as an expert under Rule 220. *Voyles*, 183 Ill. App. 3d at 836-37.

The witness in this case satisfied each of the factors relied upon by the *Voyles* court in reaching its ultimate conclusion. As such, the defendants here, like the plaintiffs in *Voyles*, were not required to disclose Park as expert witness under Rule 220. The trial court's ruling to the contrary was an abuse of discretion. *Wilson*, 118 Ill. App. 3d 714, 455 N.E.2d 195; *Turney*, 94 Ill. App. 3d 678, 418 N.E.2d 1079; *Phillips*, 13 Ill. App. 3d 512, 300 N.E.2d 771.

Plaintiffs raise several additional grounds upon which the trial court's ruling could be sustained. The first ground which gives us pause is that defendants have waived any error in the trial court's ruling by failing to make an offer of proof at trial as to the content of Park's testimony if allowed to testify.

■ ■ As plaintiffs note, generally, an offer of proof is required to preserve for appeal any limitation upon a witness' testimony. (*Light v. Steward* (1984), 128 Ill. App. 3d 587, 470 N.E.2d 1180.) However, plaintiffs ignore the corollary rule that an offer of proof is not required where a witness is competent to testify on a particular matter and the content of his testimony if allowed is obvious. (*Scaggs v. Horton* (1980), 85 Ill. App. 3d 541, 411 N.E.2d 870.) Otherwise stated, an offer of proof is not required where it is apparent the trial court clearly understood the nature and character of the evidence sought to be introduced or the questions and circumstances surrounding them reveal the purpose and materiality of the evidence. (*Volvo of America Corp. v. Gibson* (1980), 83 Ill. App. 3d 487, 404 N.E.2d 406.) The only testimony which defendants claim Park was not al-

lowed to give was his opinion, if any, on this proceeding, *i.e.*, its merit. We believe that the testimony which defendants assert Park would have given was sufficiently obvious to make an offer of proof unnecessary. *Light*, 128 Ill. App. 3d 587, 470 N.E.2d 1180; *Gibson*, 83 Ill. App. 3d 487, 404 N.E.2d 406.

The only other ground for sustaining the trial court's ruling that requires address is that Park was incompetent to give his opinion on the merits of this case. However, Park had been Mt. Prospect's village planner and director of planning and zoning for almost three and five years, respectively. As village planner, his primary function was the preparation of Mt. Prospect's 1981 comprehensive land use plan. Moreover, while it is the state of events at the time of trial which controls the right to disconnection, not those previously existing (*Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 915, 527 N.E.2d 1273), defendants do not assert that the state of events changed since Park formulated his opinion on the merits of their action, *i.e.*, during his employment by Mt. Prospect, which ended eight months before the trial in this case. Park was sufficiently competent to give his opinion at trial on the ultimate issue in this case.

The trial court's erroneous exclusion of Park's opinion testimony entitles defendant to a new trial. (*Voyles*, 183 Ill. App. 3d 833, 539 N.E.2d 801.) However, in accordance with defendants' requested relief, that trial shall be limited solely to the admission of Park's opinion testimony.

For all of the foregoing reasons, the order of the circuit court granting plaintiffs' petition for disconnection is reversed and remanded for proceedings consistent herewith.

Reversed and remanded.

CERDA, P.J., and RIZZI, J., concur.