LA SALLE NATIONAL TRUST, N.A., as Trustee, *et al.*, Petitioners-Appellees, v. THE VILLAGE OF METTAWA *et al.*, Respondents-Appellants.

Second District   Nos. 2—92—0679, 2—92—0688 cons.

Opinion filed June 9, 1993.—Rehearing denied August 25, 1993.

Paul E. Veith, of Sidley & Austin, of Chicago (Donald J. Gralen, of counsel), and George A. Ranney, Sr., of Libertyville, for appellants.

James K. Stucko, of Pedersen & Houpt, P.C., of Chicago (Arthur M. Holtzman, of counsel), Conzelman, Snarski & Stepanich, of Waukegan (Murray R. Conzelman, of counsel), and Julius Abler, of Lake Forest, for appellees.

Arthur C. Thorpe, of Klein, Thorpe & Jenkins, Ltd., and Nancy J. Arnold, of Kralovec, Marquard, Doyle & Gibbons, Chartered, both of Chicago, and Beth Anne Janicki, of Illinois Municipal League, of Springfield, for *amici curiae.*

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondents, the Village of Mettawa (Village) and certain residents and taxpayers of the Village (residents), each appealed from an order of the circuit court of Lake County granting a petition to disconnect land (the petition) from the Village. The petition named the Village as respondent and the residents elected to become respondents pursuant to their statutory right. We consolidated their appeals. Petitioners, La Salle National Trust (La Salle), as trustee of a land trust, and W.W. Grainger, Inc. (Grainger), the sole beneficiary of the land trust, brought the petition pursuant to section 7—3—6 of the Illinois Municipal Code (disconnection statute) (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6).

The issues on appeal are whether the trial court erred when it: (1) denied the Village's motion to strike and dismiss the petition; (2) denied the Village's motion for a directed verdict at the end of petitioners' case; (3) found that petitioners had met four statutory disconnection requirements; and (4) found that a Village of Mettawa ordinance related to disconnection was invalid and unenforceable.

The Village of Barrington Hills, the Village of Lincolnshire and the Illinois Municipal League were granted leave to file briefs as *amici curiae* (134 Ill. 2d R. 345) in support of respondents.

The Village, a home rule municipality, covers some 3,400 acres in southeastern Lake County. The Village is zoned almost exclusively for residential use and, by design, almost no commercial activity takes place within its borders. The corporate authorities consider the Village to be a rural residential oasis among the intense urbanization of the surrounding communities. The Village adopted a comprehensive plan in 1984 which aims to preserve its rural nature by planning only for the development of single-family residences on lots of at least five acres.

Approximately 2,730 acres of property within the Village are available for residential use. Of that total, approximately 1,420 acres, including the land petitioners seek to disconnect (the disconnection property), are presently vacant.

The disconnection property consists of 517 acres owned by La Salle. The disconnection property represents 15% of the total Village acreage, 19% of the Village's acreage exclusive of forest preserve land, and 42% of the remaining vacant land in the Village to be developed.

The disconnection property consists of 11 separate parcels most of which Grainger acquired in June 1988. Grainger purchased the balance of the parcels shortly before it filed the petition. The disconnection property parcels are located in the southeastern quarter of the Village and are arranged in a shape resembling the letter "C" (see maps). Tract IX comprises the lower right portion of the disconnection property, it is roughly square in shape, and it is undisputed that its northern, eastern, and part of its southern edges are coterminous with the Village border for a distance of 3,070 feet. Tract II is in the upper right portion of the C-shaped disconnection property. Tract II is more than a mile from tract IX.

In 1989, Grainger, a corporation engaged in the business of industrial distribution in suburban Cook County, planned to develop an office complex to serve as its world headquarters on tract II. Pursuant to this plan, Grainger filed an application with the Village to rezone the disconnection property. Grainger later withdrew its rezoning application and on the same day filed the petition to disconnect the property.

The first issue on appeal is whether the trial court erred when it denied the Village's motion to strike and dismiss the petition filed pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). Respondents contend that the petition essentially consisted of an *in haec verba* recounting of the statutory requirements for disconnection with bald assertions that the requirements had been met and insufficient facts to support the assertions. Respondents argue that the petition was insufficient at law because the disconnection statute itself requires petitioners to allege facts in support of their petition for disconnection and that section 2—601 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—601), which controls where the disconnection statute is silent, also requires substantial allegations of fact to state a cause of action. Respondents contend that the trial court should have granted the motion to strike and dismiss the petition because it was insuffi-

cient at law and that a new trial is required if a trial court erroneously denies a motion to strike and dismiss a pleading.

Petitioners respond that under section 2—612 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—612) the test for a good pleading is whether the pleading reasonably informs the other party of the nature of the claim. Petitioners argue that the petition was sufficient because it informed respondents of the nature of the claim. Petitioners also argue that respondents waived any objections to the sufficiency of the pleadings by answering the petition.

The disconnection statute sets out the requirements for disconnection by way of court procedure. The disconnection statute provides, in relevant part:

"The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which (1) contains 20 or more acres; (2) is located on the border of the municipality; (3) if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality; (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted; (5) if disconnected, no substantial disruption will result to existing municipal service facilities, such as, but not limited to, sewer systems, street lighting [*sic*], water mains, garbage collection and fire protection; (6) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future." Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6.

The disconnection statute requires the owner or owners of land lying within the corporate limits of a municipality from which the land is to be disconnected to file a petition for disconnection. (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6.) The statute sets out six specific requirements for disconnection.

The petition consists of 10 numbered paragraphs. Paragraph 1 states that the petition is brought under the disconnection statute. Paragraphs 2 and 3 allege ownership of the disconnection property by the land trust with Grainger the sole beneficiary and that the disconnection property is within the corporate boundaries of the Village. Paragraph 10 merely notes that the Village is made a party defendant to the proceeding. Paragraphs 4 through 9 baldly assert that each of the specific requirements for disconnection is met. No specific facts to support these assertions are alleged; rather, petitioners merely cite, *in haec verba*, each of the six specific requirements and assert that

they are met. The question before us is whether the petition was a legally sufficient pleading.

Illinois is a fact-pleading State. (*Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518.) Accordingly, a pleader is required to set out the ultimate facts which support his or her cause of action and legal conclusions unsupported by allegations of specific facts are insufficient. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 509-10.

However, pleadings are not intended to create technical obstacles to reaching the merits of a case at trial; rather, their purpose is to facilitate the resolution of real and substantial controversies. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145.) To determine whether a cause of action has been stated, the entire pleading must be considered, and a cause should not be dismissed on the pleadings unless it clearly appears that no facts can be proved which will entitle the pleader to a judgment. (*Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 438.) It is impossible to formulate a simple methodology to make this determination, and therefore a flexible standard must be applied to the language of the pleadings with the aim of facilitating substantial justice between the parties. (*Gonzalez v. Thorek Hospital & Medical Center* (1991), 143 Ill. 2d 28, 34.) The disposition of a motion to strike and dismiss for insufficiency of the pleadings is largely within the sound discretion of the court. *Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 299.

■ Here, petitioners have alleged specific facts in the petition to support their conclusions that the general requirements of the disconnection statute are met. Petitioners clearly allege their ownership of the disconnection property required by the statute and that the property lies within the corporate limits of the village. Petitioners supported these allegations by attaching lengthy legal descriptions of the property to the petition. Thus, respondents' assertion that "[n]ot one fact appears in all of the Petition to support the repetitious quoting by Petitioners of the disconnection statute itself" is simply not true.

However, petitioners do not allege any specific facts to support their conclusions that the specific requirements of the disconnection statute have been met. Nonetheless, we conclude that the pleadings were not so insufficient that a reversal is warranted here.

First, as petitioners point out, the specific requirements for a disconnection cause of action are set out by the disconnection statute itself. Thus, it is not surprising that petitioners would track the language of the statute in formulating their petition. In addition, while petitioners have not alleged specific facts to support their assertions

that the requirements of the disconnection statute have been met, neither does it clearly appear that no set of facts could be proved which would entitle petitioners to a judgment in their favor. Moreover, petitioners have alleged specific facts to support the general requirements of the statute. Furthermore, while we recognize that more than mere notice pleading is required in Illinois (*A, C & S, Inc.*, 131 Ill. 2d at 438), the petition in this case, by tracking the statute, does allege every ultimate fact which must be proved in order for petitioners to be entitled to judgment and certainly informs the respondents of what they must defend against. *In re Beatty* (1987), 118 Ill. 2d 489, 499.

Finally, the case defendants cite for the principle that a reversal may be warranted, even after a trial, when a trial court errs in denying a motion to dismiss a pleading is distinguishable. In that case, *Gray v. City of Plano* (1986), 141 Ill. App. 3d 575, not only was the plaintiff's pleading factually insufficient, but plaintiff there introduced evidence at trial which varied from the allegations of the pleadings and introduced new theories into the case at trial. (*Gray*, 141 Ill. App. 3d at 579-80.) Neither of those scenarios applies to this case.

For all these reasons, we find that the trial court did not err when it denied respondent's motion to strike and dismiss the petition. Accordingly, it is unnecessary for us to reach the question of whether, by answering, respondents waived their right to appeal the denial of their motion to dismiss.

The next issue on appeal is whether the trial court erred when it concluded that petitioners met their burden of proof for disconnection under the disconnection statute and denied respondents' motion for a directed verdict (directed finding). At the conclusion of petitioners' case, the Village and residents each motioned for directed verdicts on the ground that petitioners had not sustained their burden of proof with respect to the specific requirements for disconnection in the disconnection statute and had not overcome respondents' affirmative defense. The trial court stated that it was premature to rule on the affirmative defense question because respondents had not yet established the affirmative defense. The court then denied respondents' motion for a directed verdict with respect to all the specific requirements of the disconnection statute except the "on the border" requirement, which it reserved for later ruling pending the submission of briefs.

Directed verdicts should be entered only in cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence would ever stand. (*Ward v. K mart Corp.* (1990), 136

Ill. 2d 132, 139-40, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The same standard is applied by a reviewing court. *Knight v. Haydary* (1992), 223 Ill. App. 3d 564, 579.

■ After a careful reading of the record and after viewing the evidence in the aspect most favorable to petitioners, we conclude that the evidence did not so overwhelmingly favor respondents' position that no contrary verdict based on that evidence could ever stand. Accordingly, we find that the trial court did not err when it denied respondents' motions for directed verdicts.

■ We turn now to questions concerning the specific statutory requirements for disconnection based on all of the evidence in the record. The disconnection statute allows disconnection of property lying within the corporate limits of a municipality where the following requirements are met: (1) the property consists of 20 or more acres; (2) the property is located on the border of the municipality; (3) disconnection will not isolate any part of the municipality from the remainder; (4) disconnection will not unreasonably disrupt the growth prospects and plan and zoning ordinances of the municipality, if any; (5) disconnection will not substantially disrupt existing municipal service facilities; and (6) disconnection will not unduly harm the municipality through the loss of tax revenue in the future. Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6.

In its post-trial order filed May 15, 1992, the trial court found, *inter alia*, that each of the six statutory requirements had been met. Respondents do not contest the trial court's finding with respect to the first and third requirements. However, respondents maintain that the trial court erred in finding that the other requirements were met. We will address each of the contested statutory requirements individually.

We first consider whether the second disconnection statute requirement, the "on the border" requirement, was met. The trial court found that the disconnection property was located on the Village border for a distance of 6,495 feet. In addition, the trial court found that "[c]onditionally, *** the 3,070 feet which is not disputed to be on the border of Mettawa, is sufficient by itself to require disconnection."

Respondents concede that 3,070 feet of the disconnection property was on the Village border. However, respondents contend that the trial court erred in its finding that 6,495 feet of the disconnection property was on the Village border, and that 3,070 feet of the 42,100-foot total perimeter of the disconnection property is not sufficient to satisfy the disconnection statute. Respondents argue that the finding that 3,070 feet is sufficient is erroneous because such a finding is at

odds with the plain language of the disconnection statute; that it does not satisfy an implied proportionality requirement in the statute; and that it is an erroneous extension of the concept of contiguity.

■ We first address the trial court's finding that 6,495 feet of the disconnection property is on the Village border. The disputed 3,425 feet of the disconnection property perimeter (6,495 minus 3,070) lies along the western part of the southern edge of tract IX in the lower right part of the C-shaped disconnection property and the southern edge of tract V, which is west of tract IX and separated from it by Riverwoods Road (see maps). This stretch of the disconnection property perimeter is directly adjacent to the north side of Everett Road. Respondents contend that the Village's southern boundary at this point is either on the south side of Everett Road or in the middle of Everett Road and that, since the southern edge of the disconnection property is the north side of Everett Road, the disputed stretch of the disconnection property perimeter is not "on the border" of the Village.

At trial, petitioners presented an expert witness, Lawrence Traynoff, a registered professional land surveyor, who testified on cross-examination that maps he prepared from official county documents showed that the Village boundary along the disputed stretch of the disconnection property was in the middle of Everett Road. Subsequently, petitioners' attorney stipulated that the southern limit of the disconnection property in the disputed stretch was the north side of Everett Road, that the Village's southern boundary in this stretch was either in the middle of Everett Road or coterminous with the south side of Everett Road, and that petitioners did not have title to any part of Everett Road. Nonetheless, petitioners contend that the disputed portion of the disconnection property is on the border of the Village under the rule expressed in *Independent Amusements, Inc. v. Village of Milan* (1952), 348 Ill. App. 258.

In *Milan*, as in the present case, a petition to disconnect land involved a dispute as to whether the land to be disconnected was on the border of the municipality, a statutory disconnection requirement. (*Milan*, 348 Ill. App. at 259.) In *Milan*, the parties stipulated that the disconnection property in question was directly adjacent to a State road which served as the boundary for the village. (*Milan*, 348 Ill. App. at 260.) The *Milan* court concluded that, under those facts, the disconnection property was on the village border and, after determining the other statutory requirements for disconnection were met, affirmed the trial court judgment in favor of disconnection. (*Milan*, 348 Ill. App. at 263-65.) Petitioners argue that under the principles expressed

in *Milan* the disconnection property in this case is on the Village border.

Respondents point to an unpublished abstract decision of this court which found there was a "gap" between land sought to be disconnected which extended to the middle of a city-owned street and the village boundary which was on the far edge of the street and concluded, therefore, that the disconnection property there was not on the border of the city and reversed a trial court's decision to allow disconnection. (*In re Petition of Hillcrest Center, Inc., & Hillcrest Service Corp. for Disconnection of Certain Territory From the City of Crest Hill* (1962), 36 Ill. App. 2d 19 (abstract of decision).) Thus, the immediate question before us .is whether either *Milan* or *Crest Hill* applies to the facts of this case and, if so, whether either is controlling.

In its most recent decision on the disconnection statute, our supreme court has reaffirmed a long-held position that the disconnection statute should be liberally construed in favor of disconnection. (*Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146, 154-55.) Although the burden of proof is still on the party seeking disconnection, the liberal construction standard has become part of disconnection law. (*Village of Barrington Hills*, 133 Ill. 2d at 155.) A reviewing court should not disturb a trial court's finding that a statutory disconnection requirement was met unless the finding was clearly against the manifest weight of the evidence. *City of De Kalb v. Town of Cortland* (1992), 233 Ill. App. 3d 307, 310.

Applying these principles to the facts of this case, we conclude that the trial court's finding that 6,495 feet of the perimeter of the disconnection property was on the Village border was not against the manifest weight of the evidence and not erroneous as a matter of law and therefore should not be disturbed. The trial court heard the testimony of petitioners' expert witness that the Village boundary was in the middle of Everett Road and, despite respondents' evidence that the boundary was on the south side of Everett Road, could have reasonably concluded that the boundary was in the middle of the road. Based on the principles espoused by *Milan*, the trial court could also have reasonably concluded that the road essentially constituted the Village boundary and, even if the boundary was on the road's south side, that petitioners' land directly adjacent to the north side of the road was on the border for disconnection purposes. Such a conclusion is supported because the facts in this case are closer to the *Milan* facts than the *Crest Hill* facts. *Crest Hill* is distinguishable from the facts in *Milan* and here because in *Crest Hill* the municipality owned

the road in question and therefore also owned any "gap" between the disconnection property boundary and the municipal boundary, while here and in *Milan* another entity owned the road.

For all these reasons, we conclude that the trial court's finding that 6,495 feet of the perimeter of the disconnection property was on the Village border was not against the manifest weight of the evidence and not erroneous as a matter of law. Accordingly, we will not disturb the trial court's finding.

Respondents next contend that the trial court erred as a matter of law when it found that the disconnection property was on the Village border because such a finding was contrary to the plain language and intent of the disconnection statute. Respondents essentially argue that the disconnection statute was intended to protect municipalities from the potentially devastating effects of disconnection by limiting disconnection to fringe areas in order to prevent the dismemberment of a municipality. Respondents maintain that the trial court showed a disregard for the spirit of the disconnection statute by allowing the disconnection of tracts far from the Village's border.

Petitioners respond that the plain language of the disconnection statute speaks for itself and that numerous cases have held that when a court finds that the statutory requirements for disconnection have been met the court has no discretion and must order disconnection. Petitioners contend that respondents' argument is really with the General Assembly because respondents want the language of the disconnection statute changed and doing that is up to the legislature. Finally, petitioners note that the disconnection statute itself refers to "an area of land consisting of one or more tracts" and argue that, contrary to respondents' view, this language allows for the disconnection of areas consisting of multiple tracts as in this case.

■■ Liberal construction of the disconnection statute in favor of disconnection is part of disconnection law. (*Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146, 154-55.) Accordingly, disconnection is favored when the statutory requirements for disconnection are met, regardless of the petitioner's purpose. (*City of De Kalb v. Town of Cortland* (1992), 233 Ill. App. 3d 307, 310.) If land to be disconnected meets the statutory requirements for disconnection, a court must grant a petition for disconnection. *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543, 551.

Here, the plain language of the statute only requires that the "area" of land to be disconnected be on the municipal border and the statutory language allows for "one or more tracts" to constitute an

area. (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6.) Based on this language and the liberal construction standard favoring disconnection when the statutory requirements are met, we conclude that the trial court's finding did not contravene the plain language or intent of the disconnection statute.

Respondents next assert that the trial court erred when it found the disconnection property was on the Village border because the property did not satisfy a proportionality requirement for disconnection. Respondents rely almost exclusively on an unpublished abstract opinion, *Crest Hill*, as authority for this requirement. In *Crest Hill*, after determining that only 248.71 feet out of a total disconnection property perimeter of 4,529 feet was on the municipal border, the court concluded the disconnection property was not on the border because "[t]o hold otherwise would defeat the purpose and intent of the statute and permit a little tale [*sic*] to wag a big dog." (*Crest Hill*, slip op. at 7-8.) Respondents argue that this reasoning relies on a proportionality requirement which should also apply to this case and that the trial court erred when it concluded the proportionality requirement was met.

Petitioners respond that the authority of *Crest Hill* is questionable because the case it relied on for the proportionality requirement has been questioned several times by later decisions. Petitioners also argue that even if the authority for the proportionality requirement was not questionable, the requirement itself is unworkable because it does not give any guidelines for applying the "little tail—big dog" standard. In addition, petitioners argue that assuming, *arguendo*, there is a proportionality requirement, the facts of this case would more than satisfy such a requirement because more than a mile of the disconnection property perimeter is "on the border." Finally, petitioners note that the disconnection statute itself does not contain a size or proportionality factor beyond the requirement that the area of land to be disconnected contain 20 or more acres. Petitioners reason that, if the General Assembly had wanted to put additional size or proportionality factors into the disconnection statute, it could have done so, and the fact that it chose not to do so means there is no additional size or proportionality requirements in the disconnections statute.

■ We find petitioners' arguments on this question persuasive. If the legislature had wanted to put a proportionality requirement into the disconnection statute border requirement, it could certainly have done so, but it has chosen not to do so. We also agree that a little tail—big dog standard, without more, is difficult to apply, at best. Finally, even if there were a proportionality requirement, we conclude

that the trial court's finding in this case is not erroneous. The trial court found that 6,495 feet of the perimeter of the disconnection property was on the Village's border. According to respondents, the total perimeter of the disconnection property is 42,100 feet. Again applying the liberal construction standard to the disconnection statute, we conclude that the trial court's finding that the disconnection property was on the border was not erroneous on the ground that the disconnection property failed to satisfy a proportionality requirement.

Respondents' final argument that the trial court erred when it found that the disconnection property met the border requirement of the disconnection statute is that the trial court's finding erroneously extended the concept of "contiguity" established by other disconnection cases. The disconnection property consists of 11 separate tracts arranged roughly in the shape of a "C." Only two of the tracts actually are on the Village border. The other nine tracts are contiguous one to another, but only one of those tracts is directly contiguous to either of the two tracts which is actually on the border (see map of tracts).

Respondents contend that because of the arrangement of the tracts in the disconnection property the on-the-border requirement was not met. Respondents contend that the most extreme example of the use of contiguity to satisfy the border requirement in a disconnection case was in *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1985), 135 Ill. App. 3d 543. Respondents argue that *Long Grove* held that nonborder tracts within the area to be disconnected met the border requirement because they were directly contiguous to other tracts in the disconnection area which were actually on the municipal border, but gave no direction regarding more remote tracts (not directly contiguous to border tracts) such as those in this case. Respondents argue that the trial court's finding in this case that remote tracts were on the border went far beyond the *Long Grove* formulation and is unwarranted on the facts of this case which are distinguishable from the *Long Grove* facts. Respondents further argue that petitioners convinced the trial court erroneously to use contiguity as it is used in annexation law when such an application is misplaced in disconnection law.

Petitioners respond by pointing to cases which conclude that contiguity has the same meaning in annexation law and disconnection law. Petitioners argue that, because contiguity has the same meaning in disconnection and annexation law, it is reasonable to apply contiguity the same way in both kinds of cases. Petitioners maintain that the contiguity requirement in annexation law is met if all the parcels in

an area of land to be annexed are contiguous one to another and that should also be the rule in disconnection cases. Petitioners also contend that allowing the tacking of multiple contiguous tracts to satisfy the disconnection statute border requirement fosters judicial efficiency by avoiding piecemeal disconnection proceedings. Finally, petitioners argue that allowing the disconnection of all tracts contiguous one to another within the disconnection area is warranted in this case because all the tracts are owned by La Salle and they are therefore essentially one large tract.

"Contiguity" means in actual contact, touching, or adjoining. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 352.) Although contiguity, *per se*, is not an element in the current disconnection statute, when contiguity is at issue in a petition for disconnection, contiguity has the same meaning under the disconnection statute as under the annexation statute. (*In re Annexation of Certain Territory to the Village of Buffalo Grove* (1970), 128 Ill. App. 2d 261, 266.) Contiguity should be given a uniform liberal construction which requires that the tracts of land in the territory to be disconnected or annexed touch or adjoin one another in a reasonably substantial physical sense. (*In re Proposed Incorporation of the Village of Volo* (1992), 229 Ill. App. 3d 321, 327-28 (concluding contiguity has the same meaning under disconnection, annexation, and incorporation statutes).) A determination as to the reasonableness of contiguity must be based on the facts of each case. (*Village of Volo*, 229 Ill. App. 3d at 321.) When there is reasonable contiguity among parcels in a territory to be annexed, even extreme irregularity of boundaries does not bar annexation. *In re Petition to Annex Certain Territory to the Village of North Barrington* (1991), 144 Ill. 2d 353, 367.

Here, respondents do not contest the contiguity of the 11 tracts which make up the disconnection property. Thus, we are not required to determine the reasonableness of the contiguity among the 11 tracts in the disconnection property. What respondents do object to is the extension of annexation statute contiguity to the disconnection statute. In annexation cases, it is clear that contiguity applies to remote tracts contiguous one to another. But respondents argue that in disconnection cases contiguity has not applied beyond tracts contiguous to those actually on the border and that this, therefore, is the rule in disconnection cases. We find respondents' arguments unpersuasive.

■ We conclude that the disconnection statute does not limit the application of contiguity in this case to tracts contiguous to border tracts. We reach this conclusion for the following reasons: (1) the disconnection statute speaks of an "area of land consisting of one or

more tracts" and says that the area, not each of the tracts which makes up the area, must be on the border of the municipality, *i.e.*, the statute itself anticipates tracts not on the border; (2) our supreme court has specifically found that a liberal construction standard has become part of the disconnection statute favoring disconnection when the statutory requirements are met (*Village of Barrington Hills*, 133 Ill. 2d at 154-55); (3) this court has determined that "contiguity" means the same thing under the disconnection and annexation statutes (*Village of Buffalo Grove*, 128 Ill. App. 3d at 266); (4) under the annexation statute, as long as the tracts are contiguous one to another, even extreme irregularity of boundaries resulting in the relative remoteness of some tracts in the annexation area from those on the border of the municipality will not bar annexation (*Village of North Barrington*, 144 Ill. 2d at 367); (5) the tracts in this case are contiguous one to another; and (6) the owner of record of all the tracts is the same so that the disconnection property can be seen as constituting a single tract rendering the contiguity argument moot.

Accordingly, we find that the trial court did not err for reasons of contiguity when it found that the disconnection area was on the Village border.

In summary, based on the foregoing, we conclude the trial court's finding that the second requirement of the disconnection statute was met was not against the manifest weight of the evidence or erroneous as a matter of law. Accordingly, we will not disturb the trial court's finding.

The next issue on appeal is whether the fourth requirement of the disconnection statute was met. Under the fourth requirement, an area of land may be disconnected from a municipality only if "the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted." (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6(4).) The trial court found that this requirement was met. Respondents appeal this finding.

Respondents essentially maintain that the trial court erred in its finding because: (1) disconnection would unreasonably disrupt the Village's growth prospects and plan and zoning ordinances when considered in the context of the Village as a whole; (2) petitioners' expert witnesses were either unqualified, unconvincing, or wrong and therefore plaintiffs did not meet their burden of proof; and (3) the trial court should have considered either the Village's comprehensive plan or the specific plan of development proposed by petitioners for the disconnection property in its decision.

Petitioners respond that the testimony of their experts was competent and did prove that disconnection would not be unreasonably disruptive of the Village's growth prospects and plan and zoning ordinances, and that respondents did not present a specific plan for the development of the disconnection property which is required to defeat a petition for disconnection.

Under the standard of liberal construction of the disconnection statute in favor of disconnection, the fourth requirement of the disconnection statute focuses on the growth prospects and plan and zoning ordinances of the municipality in question as a whole, and relevant considerations must be limited to the facts as they exist at the time of the hearing on the petition. (*Village of Barrington Hills*, 133 Ill. 2d at 155-56.) Accordingly, although "growth prospects" seems to connote consideration of future development, neither the future development of the site nor the future development of the Village is a proper consideration under this prong of the statute. (*Village of Barrington Hills*, 133 Ill. 2d at 156.) Thus, a municipality cannot thwart a petition for disconnection on the grounds that it frustrates its future designs or may affect a state of events which it desires. (*First National Bank v. Village of Mt. Prospect* (1990), 197 Ill. App. 3d 855, 859.) When "growth prospects" is narrowly construed in this way, a finding that disconnection will not unreasonably disrupt such prospects is required "unless a municipality comes forward with evidence of existing definite, concrete and approved plans to further develop the property sought to be disconnected." (*Village of Mt. Prospect*, 197 Ill. App. 3d at 860.) The mere potential for development or redevelopment of disconnected property and attempts to show this by way of a comprehensive municipal plan are, by themselves, insufficient to establish that disconnection will unreasonably disrupt growth prospects. *Village of Mt. Prospect*, 197 Ill. App. 3d at 860.

■■ Based on these principles, we conclude that the trial court's finding that the fourth statutory requirement was met was not against the manifest weight of the evidence. In pointing to the disruptive impact disconnection would have on the growth prospects and plan and zoning ordinance of the Village as a whole, respondents argued that disconnecting 42% of the Village's vacant land suitable for single-family residential development would unreasonably disrupt the Village's growth prospects. However, there was evidence that the Village could annex several areas of land, notwithstanding disconnection, which would increase its land suitable for residential development. In addition, petitioners' expert, Thompson Dyke, testified that the average annual growth rate for the Village over the last 10 years was 4.7

new homes per year. Mr. Dyke calculated that at this rate of growth it would take 40 to 50 years to fill the Village land available for residential development even after disconnection and without annexation of additional land. Based on this evidence, we cannot say that the trial court's finding was against the manifest weight of the evidence.

This conclusion is buttressed by the fact that respondents did not come forward with evidence of an existing definite, concrete and approved plan for the development of the disconnection property. Respondents argue that the Village comprehensive plan, written in 1984, calls for the development of the disconnection property as single-family residences and was therefore a specific plan for the development of the property. However, on cross-examination, respondents' expert testified that the comprehensive plan had not changed since it was written in 1984 and that he knew of no actual plan by any owner to construct a single-family residence on the disconnection property. Thus, the Village's comprehensive plan, by itself, is insufficient to show that disconnection would unreasonably disrupt its growth prospects. Alternatively, respondents argued that petitioners' plan to construct an office complex on the land was a specific plan for the development of the land which the trial court should have considered in reaching its decision. However, the evidence shows that this plan was never approved by the Village. Accordingly, this plan does not show that disconnection would unreasonably disrupt the Village's growth prospects.

We also find unavailing respondents' allegations that petitioners' expert witnesses were incompetent, unconvincing or wrong. We have carefully reviewed the record and are not convinced that the trial court erred in admitting and relying on the testimony of petitioners' expert witnesses. It is the province of the trial court as the trier of fact to determine the qualification and credibility of expert witnesses, and a court of review cannot substitute its judgment on these matters unless the trial court's findings are against the manifest weight of the evidence. *Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 919.

Finally, with respect to disruption of the Village's zoning ordinances, we conclude that the trial court did not err in its finding. The evidence showed that, if disconnected, the disconnection property would become unincorporated land under county jurisdiction and would be zoned "CS," which is essentially the same as its current zoning status. County CS zoning requires single-family residences on lots of at least 200,000 square feet, while the current Village zoning requires at least five acres (217,000 square feet). Because these zoning

classifications do not materially differ, we cannot say that the trial court's finding was against the manifest weight of the evidence. (*Frank v. Village of Barrington Hills* (1982), 106 Ill. App. 3d 747, 754.) Moreover, disconnection will not unreasonably disrupt the proportions of Village land classified for various uses. (*Harris Trust & Savings Bank v. Village of Barrington Hills* (1988), 177 Ill. App. 3d 673, 678.) The portion of Village land zoned R-1 will be more than 90% both before and after the disconnection.

For all these reasons, we conclude that the trial court's finding that the fourth requirement of the disconnection statute was met was not against the manifest weight of the evidence. Accordingly, we may not disturb the finding.

The next issue on appeal is whether the fifth disconnection statute requirement was met. Under the fifth requirement, an area of land may be disconnected from a municipality if "no substantial disruption will result to existing municipal service facilities such as, but not limited to, sewer systems, street lighting [*sic*], water mains, garbage collection and fire protection." (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6(5).) The trial court found that this requirement was met. Respondents appeal this finding.

Respondents again argue that petitioners' expert witnesses did not present competent testimony on this requirement and petitioners therefore failed to meet their burden of proof. We disagree.

■ Respondents' primary argument is that petitioners' expert, Thompson Dyke, did not answer the question put to him regarding his opinion whether disconnection would substantially disrupt existing municipal service facilities. The evidence shows that Mr. Dyke replied, in part, that disconnection "would not disrupt the community nor its Comprehensive Plan nor its zoning in any way." We find that respondents' interpretation of this answer as nonresponsive is too narrow. A straightforward interpretation is that Mr. Dyke opined that disconnection would not disrupt the community in any way. Clearly, when placed in context, this is tantamount to replying that disconnection will not substantially disrupt the community service facilities. Furthermore, there is ample additional evidence in the record to show that the Village essentially does not have any service facilities. Accordingly, disconnection cannot disrupt something that does not exist.

For these reasons, we conclude that the trial court's finding that the fifth requirement of the disconnection statute was met was not against the manifest weight of the evidence. Accordingly, we may not disturb that finding.

The next issue before us is whether the sixth disconnection statute requirement was met. Under the sixth requirement, land may be disconnected from a municipality if "the municipality will not be unduly harmed through loss of tax revenue in the future." (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6(6).) The trial court found that the sixth requirement was met. Respondents appeal this finding.

Respondents' primary argument against the trial court's finding is an attack on the responsiveness and bases of opinion of petitioners' expert witness, Ronald V. Norene. Although Norene opined that "the village will not be unduly harmed through loss of tax revenue in the future" if the subject property was disconnected, respondents contend that his testimony "did not respond to the statutory criterion." Respondents also argue that Norene's opinions and analysis are entitled to little weight because they are based almost exclusively upon his knowledge of the bond business. Finally, respondents point to the testimony of their expert witness, Alan Kracomer, that disconnection could result in an annual loss of tax revenue to the Village of $57,000 which the Village could take in if the disconnection property were fully developed according to the Village's comprehensive plan. Respondents argue that the loss of this revenue would unduly harm the Village.

Petitioners reply that their expert is one of the outstanding municipal finance experts in Illinois. They argue that the statement of financial information (the Statement) he prepared in regard to Village finances analyzes all of the financial information, including audits, supplied by the Village and presents this information in a series of five-year tables. Petitioners contend that the Statement shows that the Village had increasing surplus revenue every year until this case was filed (when increased legal expenses cut into the surplus). Petitioners also argue that the Statement shows that, even when the disconnection property was excluded, the equalized assessed valuation of the Village grew substantially over the five most recent tax years available, and that the revenue generated by the disconnection property made up only 13.76% of the Village real estate tax revenues in 1990 when the property was not assessed as agricultural land and only 1.377% and 1.039% in tax years 1988 and 1989 when it was assessed as agricultural land.

Petitioners argue that, based on this information, Norene accurately opined that the Village was a wealthy community, in good financial condition, and able to control its finances in the future, disconnection notwithstanding. Petitioners also note that Norene testified

that the Village has recently adopted home rule powers and that these could provide additional sources of revenue to the Village.

In reply to respondents' argument that Norene was unresponsive to the statutory requirement, petitioners assert that Norene responded directly to the statutory requirement when he opined that disconnection would not unduly harm the Village through loss of tax revenue in the future. Moreover, petitioners contend that it is the testimony of respondents' expert on this requirement which would be given little weight. Petitioners note that the testimony of respondents' expert showed that he had not examined Village audits or statements of income and expenses, did not know whether or how much money the Village had in the bank, and did not know what Village expenses were. Petitioners maintain that these facts cast doubt on the testimony of respondents' expert regarding the financial condition of the Village. Petitioners further contend that the opinion of respondents' expert that the Village would be unduly harmed through the loss of tax revenue in the future merits little weight because it is based on an assumption that the disconnection property would be fully developed but did not take into account corresponding increases in expenses.

The plain language of the disconnection statute with respect to the sixth requirement makes it clear that disconnection should be allowed unless it "unduly" harms a municipality through loss of tax revenue in the future. (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6(6); *City of De Kalb v. Town of Cortland* (1992), 233 Ill. App. 3d 307, 313.) Thus, the legislature recognized that a municipality will likely suffer some loss of tax revenue in the future because it will no longer receive the taxes generated by the disconnected property, and that loss, by itself, is not necessarily sufficient to bar disconnection. (*City of De Kalb*, 233 Ill. App. 3d at 313-14.) A determination of whether the loss of tax revenue in the future due to disconnection will unduly harm a municipality may take into account the availability of other sources of revenue to replace the revenue lost to the municipality. (*Sun Electric Corp. v. Village of Prairie Grove* (1978), 59 Ill. App. 3d 608, 611.) The determination may also consider the current and prospective overall financial condition of the municipality. *City of De Kalb*, 233 Ill. App. 3d at 314.

Here, the evidence showed that the Village was in good financial condition. Based on information for the most recent five years available, the Village has experienced growth in equalized assessed valuation and real estate tax revenue. In the same period, tax revenue increased even though the tax rate decreased and the Village had

no current or anticipated long-term debt. In fact, in each of the last four years, with the exception of 1991 when the Village was faced with nonrecurring legal expenses, the Village had an excess of revenue collected over expenses paid each year resulting in a growing cumulative surplus for the Village.

With respect to the disconnection property, the evidence showed that until the property was no longer taxed as agricultural land the real estate tax revenue generated by the disconnection property was a tiny fraction of the Village's total real estate tax revenue. In tax year 1990, when the disconnection property was no longer assessed as farm property, Grainger paid $5,813 in real estate taxes, which amounted to 13.76% of the total Village property tax revenue of $43,792. If the Village had not received this income from the disconnection property, the Village still would have had surplus income in 1990 of more than $40,000. Petitioners' expert, Norene, gave uncontradicted testimony that the Village was expected to again tax the disconnection property as farm property for tax year 1991. For tax years 1988 and 1989, when the disconnection property was taxed as farm property, the tax revenue from the property was $545.37 and $433.31, respectively. The loss of future tax revenue based on these figures would not unduly harm the Village.

Respondents contend that the Village will be unduly harmed by the loss of future tax revenue generated by the disconnection property because the property could be developed with as many as 90 single-family residences which would generate $57,000 in annual property taxes at current rates. The Village argues that it will be unduly harmed by the loss of this future tax revenue. We agree that such a loss would be significantly greater than projected losses based on the disconnection property as it is currently assessed and therefore more likely to unduly harm the Village. However, the record does not support a finding that the development envisioned by the Village is anything more than speculation. If the disconnection property was developed at the historic average rate of development (4.7 new homes per year) and all of the new homes built in the Village were built on the disconnection property, it would take 19 years to develop fully the disconnection property. However, the record shows that there are no specific plans to build any new homes on the disconnection property. Given the speculative nature of these losses, we cannot say that it was against the manifest weight of the evidence for the trial court to find that they would not unduly harm the Village. *In re Disconnection of Certain Territory from the Village of Machesney Park* (1984), 122 Ill. App. 3d 960, 961.

On the whole, the evidence showed that, at the time of the trial, the Village was in good financial condition and would have been in good financial condition even without the tax revenue generated by the disconnection property. The Village is a wealthy community which normally operates so that its annual income exceeds its annual expenses resulting in an increasing cumulative surplus. There is virtually no evidence that disconnection would change this. This does not take into account the possibility for increased revenue from other sources. There was evidence that the Village has recently adopted home rule status and that this gives the Village the power to increase real estate taxes without a maximum rate and tap other sources of income. Respondents' arguments regarding the competence or responsiveness of petitioners' expert witness are unpersuasive.

For all these reasons, we conclude that the trial court's finding that the sixth requirement of the disconnection statute was met was not against the manifest weight of the evidence. Accordingly, we may not disturb that finding.

The final question before us is whether Village of Mettawa ordinance No. 196 (Ordinance 196) is invalid and unenforceable. Ordinance 196 requires a court which has determined that a petition for disconnection of land from the Village meets the disconnection statute requirements to then place the disconnection question on the Village ballot for a vote. (Mettawa, Ill., Municipal Code, art. V, §2.502 (1991).) Under Ordinance 196, if a majority of the Village voters who cast ballots on the question vote against disconnection, then there can be no further proceedings on the matter for at least 23 months. Mettawa, Ill., Municipal Code, art. V, §2.502 (1991).

The trial court found that Ordinance 196 was invalid and unenforceable for three reasons: (1) Ordinance 196 exceeded the power granted to home rule units in that it did not pertain to the Village's government and affairs; (2) Ordinance 196 encroached on the statewide concern with establishing municipalities; and (3) Ordinance 196 encroached on the statewide concern with the efficiency of the court system. Respondents appeal the trial court's finding and maintain that all three of the reasons relied on by the trial court in reaching its finding were erroneous.

Respondents contend that as a home rule municipality the Village has concurrent power with the State with respect to disconnection. Respondents maintain that Ordinance 196 is a valid and enforceable exercise of the Village's home rule power.

Petitioners concede that the Village is a home rule unit and, as such, has broad home rule powers in matters pertaining to local gov-

ernment and affairs. Petitioners contend, however, that Ordinance 196 is invalid and unenforceable because disconnection is a matter of statewide concern and therefore is not a matter pertaining to local government and affairs. In addition, petitioners assert that Ordinance 196 is invalid and unenforceable because the Village has no authority to interfere with the court system and because Ordinance 196 improperly infringes upon the rights of property owners.

Home rule powers arise from section 6 of article VII of the Illinois Constitution. Section 6 provides, in relevant part:

"§6. Powers of Home Rule Units

(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

\* \* \*

(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive.

\* \* \*

(m) Powers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, §6.

Although the constitution clearly gives home rule units broad powers which may be exercised and performed concurrently with the State and which are to be liberally construed, these powers are not unlimited. The constitution provides for two general means of denying or limiting home rule powers which are relevant here: (1) preemption (Ill. Const. 1970, art. VII, §6(i)) and (2) limitation to matters pertaining to a home rule unit's government and affairs. Ill. Const. 1970, art. VII, §6(a).

In order to preempt home rule powers, the legislature must specifically and expressly state that the home rule powers in question are denied or limited. (*Scadron v. City of Des Plaines* (1992), 153 Ill. 2d 164, 187-88.) We have carefully reviewed the disconnection statute and find that the legislature did not preempt the powers of a home rule unit with respect to disconnection.

Because the State has not preempted a home rule unit's concurrent powers with respect to disconnection, these powers are valid if they pertain to the home rule unit's "government and affairs." (Ill. Const. 1970, art. VII, §6(a).) The underlying rationale for the limita-

tion of home rule powers to matters pertaining to local government and affairs is " 'that the powers of home rule units relate to their own problems not to those of the State or the nation.' " (*Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 540, quoting the local government committee of the Constitutional Convention, 7 *Record of Proceedings*, Sixth Illinois Constitutional Convention 1621.) Simply because a matter is one of statewide concern, however, does not necessarily mean that the matter is not also of concern to local governments. (*Scadron*, 153 Ill. 2d at 175.) Because matters can be of both local and statewide concern, the judiciary must determine which matters are sufficiently local in character so as to be subject to home rule powers and which matters are primarily of statewide concern and therefore beyond home rule powers. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 508-09.) The determination of whether a given matter is of statewide or local dimension cannot be made on the basis of a specific formula or listing of criteria, but must be made "with regard for the nature and extent of the problem, the units of government which have the most vital interest in its solution, and the role traditionally played by local and statewide authorities in dealing with it." *Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 501.

Disconnection is a matter of both local and statewide concern. Disconnection can obviously affect the local government involved, but it can also affect State government because disconnection is tantamount to the changing of a municipality's borders and is therefore on the same footing as an act for original incorporation, which is a matter of great concern for the State. (*People ex rel. Quisenberry v. Ellis* (1912), 253 Ill. 369, 376.) Successful disconnection not only affects the boundaries of the municipality involved, but disconnection necessarily also affects the boundaries of other political subdivisions of the State, and the State has plenary power with respect to municipal boundaries and establishing jurisdiction over any part of the State. 2 E. McQuillen, Law of Municipal Corporations §7.03, at 361 (3d ed. 1988).

Although disconnection affects both the local government and the State and both a local government and the State are interested in disconnection, we conclude that the traditional role of the State and the State's vital interest in disconnection make disconnection primarily a matter of statewide concern. The State has traditionally played the dominant role in regulating disconnection. It is universally recognized that municipal corporations are creatures of the State and that, absent constitutional restraints, municipal corporations are subject to the will and discretion of the legislature. (*Harris Trust & Savings Bank v. Village of Barrington Hills* (1989), 133 Ill. 2d 146, 153.) It is

also well settled that the legislature has the power to fix and control the territory and boundaries of municipalities. (*Coles v. County of Madison* (1826), 1 Ill. 154, 160.) The legislature alone has the authority to allow or require the alteration of municipal boundaries by annexation or otherwise. *In re Petition to Annex Certain Territory to the Village of North Barrington* (1991), 144 Ill. 2d 353, 369.

Our conclusion that disconnection is a matter of statewide concern and therefore not within a local government's home rule powers as a matter pertaining to local government and affairs is supported by the historically exclusive exercise of power by the State with respect to disconnection. We have not had a single case brought to our attention where a local government exercised concurrent power with the State on a disconnection matter, nor have respondents pointed to any such case. (*Cf. City of Roodhouse v. Briggs* (1902), 105 Ill. App. 116 (giving city council discretion in applying disconnection statute).) This is a major distinguishing factor when this case is compared to *Scadron*. In *Scadron*, the court found a series of prior cases in which a local government exercised power concurrently with the State. (*Scadron*, 153 Ill. 2d at 176-77.) Here, no such cases have been found. Accordingly, respondents' reliance on *Scadron* is misplaced.

Respondents' assertion that local governments have traditionally had great control over municipal boundaries is unavailing. In making this assertion, respondents rely on *In re Petition to Annex Certain Territory to Village of North Barrington* (1991), 144 Ill. 2d 353. However, *Village of North Barrington* is an annexation case, and the reference to the power of a local government in annexation matters is in the context of local government powers *vis-a-vis* the court's lack of discretion in annexation matters. (*Village of North Barrington*, 144 Ill. 2d at 369.) Respondents' contention, that disconnection and annexation are the opposite sides of the same coin and, since local governments have a say in annexation matters, it follows that they should have a say in disconnection matters, is unpersuasive. This contention fails because it ignores the fact that annexation statutes specifically provide for a local government role in the annexation process after the court has reached a decision on whether annexation is proper (Ill. Rev. Stat. 1991, ch. 24, par. 7—1—5) while the disconnection statute makes no provision for participation by a local government in the disconnection process other than as a defendant (Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6).

Our conclusion that disconnection is a matter of statewide concern is further supported by the disconnection statute itself. The disconnection statute, after setting out the requirements for disconnection discussed above, provides in relevant part:

"The procedure for disconnection shall be as follows: The owner or owners of record of any such area of land shall file a petition in the circuit court of the county where the land is situated, alleging facts in support of the disconnection. The municipality from which disconnection is sought shall be made a defendant, and it, or any taxpayer residing in that municipality, may appear and defend against the petition. If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection it shall order the specified land disconnected from the designated municipality. If the circuit court finds that the allegations contained in the petition are not true, the court shall enter an order dismissing the petition." Ill. Rev. Stat. 1991, ch. 24, par. 7—3—6.

The roles of the parties are specifically provided for by the disconnection statute. The statute provides that the municipality shall be a defendant and it may appear and defend against the petition for disconnection in court. If, after the hearing, the court determines that disconnection is proper, then the court "shall order the specified land disconnected." Thus, the disconnection statute requires the court to order disconnection when the statutory requirements are met. While it is arguable that none of this necessarily limits the concurrent power of a home rule unit, when viewed from the perspective of the traditionally exclusive nature of the exercise of State power regarding disconnection, this careful setting out of the roles of the parties with only a limited role given to the municipality certainly supports a conclusion that the legislature intended disconnection to be a matter of exclusive State control—a matter of statewide concern.

For all these reasons, we conclude that the trial court did not err when it found that disconnection is a matter of statewide concern and therefore exceeded the Village's home rule powers. Accordingly, we hold that the trial court did not err in its decision that Village of Mettawa Ordinance No. 196 was invalid and unenforceable because it did not pertain to a matter of local government and affairs.

Although the foregoing is dispositive of the question of whether Ordinance 196 is enforceable, we will also consider the issue raised on appeal of whether Ordinance 196 is unenforceable because it interferes with the efficiency of the court system. The trial court found that Ordinance 196 was unenforceable because it exceeded the Village's home rule powers by encroaching on "the efficient operation of a State-wide court system." Respondents appeal from the trial court's finding.

Respondents contend that Ordinance 196 does not encroach upon the court system because it does not change the language of or conflict

with the disconnection statute. Respondents argue that Ordinance 196 merely complements the disconnection statute through a legitimate exercise of concurrent home rule powers. We disagree.

We believe it is simply untenable to assert that Ordinance 196 does not conflict with the disconnection statute. The disconnection statute plainly states that a court which has determined that disconnection is warranted "shall order the specified land disconnected from the designated municipality." Respondents contend that the words in the disconnection statute, "[i]f the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection," show that a court making a determination in a petition for disconnection has discretion regarding the determination. Respondents argue that requiring the court to submit a disconnection petition to a local vote before ordering disconnection does not conflict with the disconnection statute because such a requirement would be within the court's discretion. This argument fails because the consistent decisions of Illinois courts hold that where the disconnection statute requirements are met the court has no discretion and must order disconnection. (See, *e.g., Indian Valley Golf Club, Inc. v. Village of Long Grove* (1988), 173 Ill. App. 3d 909, 914-15; *La Salle National Bank v. Village of Burr Ridge* (1967), 81 Ill. App. 2d 209, 214.) Because a court which determines that the disconnection statute requirements have been met by a petition for disconnection has no discretion but is required by the disconnection statute to order disconnection, we find that Ordinance 196, which requires the court to submit the disconnection petition to a local government for a vote on the disconnection petition, impermissibly interferes with and infringes upon the State judicial system. (See *City of Carbondale v. Yehling* (1983), 96 Ill. 2d 495, 504.) Accordingly, we find that Ordinance 196 is unenforceable because it improperly interferes with the State judicial system.

For the foregoing reasons, we hold that the trial court did not err in its finding that Ordinance 196 is unenforceable. Accordingly, it is not necessary for us to address petitioners' contention that Ordinance 196 improperly infringes on the rights of property owners.

For all the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and BOWMAN, JJ., concur.